UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY ALPER,

        Plaintiff,

     v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 24-1837 (DLF)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ............................................................................................ ii

Background ......................................................................................................... 1

Legal Standards .................................................................................................. 1

Argument ............................................................................................................ 3

    I.       The FBI Conducted a Reasonable Search. ........................................... 3

    II.      The FBI Appropriately Applied Exemption 3 to Withhold Information Protected from Disclosure by Statute. ................................. **Error! Bookmark not defined.**

    III.    The FBI Appropriately Applied Exemption 5 to Withhold Attorney Work Product Privileged Information. .......................................................................... 6

    IV.    All Responsive Records Were Compiled for Law Enforcement Purposes Under Exemption 7 ............................................................................................. 7

    V.      The FBI Appropriately Withheld Information Under Exemption 7(A) ................. 8

    VI.    The FBI Appropriately Withheld Information Under Exemptions 6 and 7(C). .... 10

    VII.   The FBI Appropriately Withheld Information Under Exemption 7(D) ............... 17

    VIII.  The FBI Appropriately Withheld Material Under Exemption 7(E). ................... 20

    IX.    The FBI Appropriately Withheld Records and Information Sealed by Court Order. ........................................................................... **Error! Bookmark not defined.**

    X.      The FBI Produced All Non-Exempt Reasonably Segregable Information. .......... 23

Conclusion ....................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abdeljabbar v. ATF*,
   74 F. Supp. 3d 158 (D.D.C. 2014) ........................................................................12

*Agrama v. IRS*,
   282 F. Supp. 3d 264 (D.D.C. 2017) ......................................................................22

*Albuquerque Pub. Co. v. Dep't of Just.*,
   726 F. Supp. 851 (D.D.C. 1989) ..........................................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................................2

*Barouch v. Dep't of Just.*,
   962 F. Supp. 2d 30 (D.D.C. 2013) ........................................................................14

*Billington v. Dep't of Just.*,
   301 F. Supp. 2d 15 (D.D.C. 2004) ........................................................................17

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ...............................................................................20

*Blackwell v. FBI*,
   680 F. Supp. 2d 79 (D.D.C. 2010) ..........................................................................8

*Borda v. Dep't of Just.*,
   245 F. Supp. 3d 52 (D.D.C. 2017) ........................................................................19

*Brayton v. Off. of U.S. Trade,
   Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ......................................................................2

*Callimachi v. FBI*,
   583 F. Supp. 3d 70 (D.D.C. 2022) ........................................................................20

*Campbell v. Dep't of Just.*,
   164 F.3d 20 (D.C. Cir. 1998) ..................................................................... 7, 8, 18, 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...............................................................................................2

*Clay v. Dep't of Just.*,
   680 F. Supp. 2d 239 (D.D.C. 2010) ......................................................................15

*Clemente v. FBI*,
   867 F.3d 111 (D.C. Cir. 2017) ............................................................................3, 6

*Comm*,
   3 F.4th ...................................................................................................................23

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
   554 F.3d 1046 (D.C. Cir. 2009) ...........................................................................10

*Defenders of Wildlife v. Dep't of Interior*,
   314 F. Supp. 2d 1 (D.D.C. 2004) ...........................................................................4

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ......................................................................2, 4

*Dent v. Exec. Off. for U.S. Att'ys*,
   926 F. Supp. 2d 257 (D.D.C. 2013) ......................................................................13

*Dep't of Just. v. Landano*,
  508 U.S. 165 (1993) ........................................................................................................17
*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ...................................................................................................10, 11
*Dep't of Just.*,
  870 F. Supp. 2d 70 (D.D.C. 2012) ...................................................................................20
*Dep't of Lab.*,
  478 F. Supp. 2d 77 (D.D.C. 2007) .....................................................................................2
*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ...........................................................................................................9
*Dep't of,*
  *Just.*, 800 F. Supp. 2d 200 (D.D.C. 2011) ......................................................................13
*Ecological Rights Found. v. EPA*,
  541 F. Supp. 3d 34 (D.D.C. 2021) ...................................................................................12
*Fischer v. Dep't of Just.*,
  596 F. Supp. 2d 34 (D.D.C. 2009) .......................................................................13, 17, 18
*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) .........................................................................................3
*Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, Civ. A.,
  No. 22-3419 (CKK), 2024 U.S. Dist. LEXIS 131312 (D.D.C. Jul. 25, 2024) ........................11
*Jefferson v. Dep't of Just.*,
  284 F.3d 172 (D.C. Cir. 2002) ............................................................................................7
*Jud. Watch, Inc. v. Dep't of Just.*,
  365 F.3d 1108 (D.C. Cir. 2004) ..........................................................................................6
*Jud. Watch, Inc. v. Dep't of,*
  *Com.,* 337 F. Supp. 2d 146 (D.D.C. 2004) .......................................................................20
*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ......................................................................................3
*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) ..............................................................................................4
*Kurdyukov v. U.S. Coast Guard*,
  657 F. Supp. 2d 248 (D.D.C. 2009) ..............................................................................15, 16
*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................................3
*Lazaridis v. Dep't of State*,
  934 F. Supp. 2d 21 (D.D.C. 2013) ....................................................................................16
*Leopold v. Dep't of Just.*,
  94 F.4th 33 (D.C. Cir. 2024) .............................................................................................23
*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) ............................................................................................10
*Levinthal v. FEC*,
  219 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................................7
*Long v. Off. of Pers. Mgmt.*,
  692 F.3d 185 (2d Cir. 2012) .............................................................................................13
*Loving v. Dep't of,*
  *Def.*, 550 F.3d 32 (D.C. Cir. 2008) ...................................................................................6

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ...................................................................8

*Marks v. Dep't of Just.*,
  578 F.2d 261 (9th Cir. 1978) ..................................................................4

*Martin v. Dep't of Just.*,
  488 F.3d 446 (D.C. Cir. 2007) ...............................................................16

*Maydak v. Dep't of Just.*,
  218 F.3d 760 (D.C. Cir. 2000) .................................................................9

*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) .............................................................20

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ...............................................................2

*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ......................................................2, 3

*Mendoza v. DEA*,
  465 F. Supp. 2d 5 (D.D.C. 2006) .............................................................9

*Mezerhane de Schnapp v. U.S. Citizenship & Immigr. Servs.*,
  67 F. Supp. 3d 95 (D.D.C. 2014) ...........................................................16

*Miller v. Dep't of Just.*,
  872 F. Supp. 2d 12 (D.D.C. 2012) .....................................................17, 18

*Milton v. Dep't of Just.*,
  783 F. Supp. 2d 55 (D.D.C. 2011) ..........................................................10

*Multi Ag Media LLC v. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) ...............................................................9

*N.Y. Times Co. v. NASA*,
  920 F.2d 1002 (D.C. Cir. 1990) .............................................................10

*Nat'l Ass'n of Home Builders v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) .................................................................10

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) ...............................................................10

*Nat'l Lab. Rels. Auth. v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ................................................................................8

*Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ................................................................................6

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ...................................................................4

*Ortiz v. Dep't of Health & Hum. Servs.*,
  70 F.3d 729 (2d Cir. 1995) ....................................................................18

*Parker v. Dep't of Just.*,
  934 F.2d 375 (D.C. Cir. 1991) ...........................................................17, 18

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) .................................................................3

*Prison Legal News v. Samuels*,
  787 F.3d 1142 (D.C. Cir. 2015) .............................................................10

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*,
  740 F.3d 195 (D.C. Cir. 2014) .................................................................7

*Rockwell Int'l Corp. v. Dep't of Just.*,
  235 F.3d 598 (D.C. Cir. 2001)................................................................6

*Rosenberg v. Immigr. & Customs,*
  *Enf't*, 959 F. Supp. 2d 61 (D.D.C. 2013)...........................................13

*Roth v. Dep't of Just.*,
  642 F.3d 1161 (D.C. Cir. 2011)....................................................11, 17

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991)......................................................3, 16

*Schoenman v. FBI*,
  763 F. Supp. 2d 173 (D.D.C. 2011) ....................................................19

*Schrecker v. Dep't of Just.*,
  349 F.3d 657 (D.C. Cir. 2003).............................................................16

*Sea Shepherd Conservation Soc'y v. IRS*,
  208 F. Supp. 3d 58 (D.D.C. 2016).........................................................7

*Shapiro v. Dep't of Just.*,
  34 F. Supp. 3d 89 (D.D.C. 2014)...................................................14, 15

*Shapiro v. Dep't of Just.*,
  507 F. Supp. 3d 283 (D.D.C. 2020) ...............................................21, 22

*Solers, Inc. v. IRS*,
  827 F.3d 323 (4th Cir. 2016) ...............................................................12

*Stone v. Def. Investigative Serv.*,
  816 F. Supp. 782 (D.D.C. 1993) ..........................................................18

*Summers v. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998)...........................................................23

*Swan v. SEC*,
  96 F.3d 498 (D.C. Cir. 1996)................................................................9

*Tax Analyst v. IRS*,
  294 F.3d 71 (D.C. Cir. 2002)................................................................7

Tracy v. Dep't of Just.,
  117 F. Supp. 3d 1 (D.D.C. 2015)........................................................22

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999)..............................................................3

*Voinche v. FBI*,
  46 F. Supp. 2d 26 (D.D.C. 1999) ..........................................................8

*Watch, Inc. v. Dep't of Just*, Civ. A.,
  No. 23-1485 (CRC) 2024 U.S. Dist. LEXIS 158373 (D.D.C. Sept. 4, 2024) .........................11

*Williams v. FBI*,
  69 F.3d 1155 (D.C. Cir. 1995).............................................................19

**Statutes**

5 U.S.C. § 552(7)(E) ...........................................................................27
5 U.S.C. § 552(a)(4)(B)..........................................................................1
5 U.S.C. § 552(a)(8)(A)(i)......................................................................34
5 U.S.C. § 552(b)..............................................................................34
5 U.S.C. § 552(b)(3)............................................................................7
5 U.S.C. § 552(b)(5)...........................................................................10

5 U.S.C. § 552(b)(7)................................................................................................12
5 U.S.C. § 552(b)(7)(A)...........................................................................................14
5 U.S.C. § 552(b)(7)(C)...........................................................................................16
5 U.S.C. § 552(b)(7)(D)...........................................................................................23
5 U.S.C. §§ 552(b)(6).........................................................................................1, 15
28 U.S.C. § 531........................................................................................................1
50 U.S.C. § 3024(C)(3)(B).......................................................................................8
U.S.C. § 547(1)......................................................................................................12

**Rules**

Fed. R. Civ. P. 56(a).................................................................................................2
Fed. R. Crim. P. 6(e)(3)............................................................................................9
Federal Rule of Criminal Procedure 6(e) .................................................................9

Defendant, the Federal Bureau of Investigation ("FBI" or "Bureau"),[1] respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

## BACKGROUND

On February 15, 2024, Plaintiff Ty Alper sent a Freedom of Information Act ("FOIA") request to the Federal Bureau of Investigation ("FBI") that generally sought information about the FBI's involvement in the court case of *State of Alabama v. Toforest Johnson*. *See* Seidel Decl ¶ 6; Ex. A, FOIA Request. Plaintiff's request was accompanied by a signed waiver and certification of identity from the subject of that criminal case, Toforest Johnson. *See* Seidel Decl ¶ 6. On May 7, 2024, the FBI informed Plaintiff that it identified approximately 513 pages of potentially responsive records relating to his FOIA request. *Id.* ¶ 8. On September 30, 2024, the FBI advised Plaintiff that it completed review of all potentially responsive records, and that the aforesaid records would be withheld in their entirety pursuant to FOIA Exemption 7(A) and underlying FOIA Exemptions 5, 6, 7(C), 7(D), and 7(E). *Id.* ¶ 14. To locate these records, the FBI searched the indices of its Central Records System for records dated on or before February 20, 2024, using the terms "Toforest Johnson" and "Johnson, Toforest." *Id.* ¶ 23. This search would have captured all records related to the FBI's involvement in Toforest Johnson's ongoing criminal case. *Id.* ¶ 24. Following segregability review, FBI determined that no portions of the subject records could be released without causing foreseeable harm to ongoing court proceedings, in addition to other interests that the claimed FOIA exemptions protect. *Id.* ¶¶ 80-81.

---

[1]    The Freedom of Information Act request that is the subject of this lawsuit was directed to the FBI, Ex. A, FOIA Request, a component of the Justice Department.  28 U.S.C. § 531.  Thus, the Justice Department is the only proper defendant in this lawsuit. *See* 5 U.S.C. § 552(a)(4)(B).

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See id.* at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citation omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears

'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citation omitted). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.    The FBI Conducted a Reasonable Search.

The FBI fulfilled its obligation to conduct a reasonable search for records responsive to Plaintiff's request. An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive records are likely to be located in

a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

When an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defs. of Wildlife*, 623 F. Supp. 2d at 91.

Here, there is no genuine dispute that the searches performed in response to Plaintiff's request were adequate under FOIA. To locate potentially responsive records, the FBI searched its Central Records System ("records system"), which is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI as part of its law enforcement mission. Seidel Decl. ¶¶ 16-24. The records system spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide. *Id*.

The records system consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. *Id.* ¶ 17. The broad array of records system file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, personnel, and administrative matters. *Id.* Records can be searched using the record systems general indices, which functions a digital library card catalogue. *Id.* ¶ 18. FBI personnel index information in the system by individual, organization, activity, or event when information is deemed of sufficient significance to warrant indexing for future retrieval. *Id.* The entries in the

general indices fall into two category types: main and reference. *Id*. A main index entry is created for each individual or non-individual that is the subject or focus of an investigation. *Id*. ¶ 18(a). Main subjects are identified in the case title of a file. *Id*. A reference index entry is created for individuals or non-individuals associated with an investigation, but who are not the main subjects or focus of the investigation. *Id*. ¶ 18(b). Reference subjects are typically not identified in the case title of a file. *Id*.

Sentinel is the FBI's next generation case management system, effective FBI-wide since July 1, 2012, for searching the records system. *Id*. ¶ 19. Prior to Sentinel, the FBI relied on a case management system known as Automated Case Support. *Id*. The FBI determined that any records responsive to Plaintiff's request would most likely be found using both case management systems. *Id*. ¶ 22. Using the Sentinel and Automated Case Support search functions, the FBI searched the for records using the terms "Toforest Johnson" and "Johnson, Toforest" with a search cut-off date of February 20, 2024. *Id*. ¶ 28. Accordingly, the FBI conducted a search reasonably calculated to locate records responsive to Plaintiff's request. The Central Records System is the FBI's principal records system and, given its comprehensive nature and scope, any responsive records would have been found by searching the indices using Plaintiff's name. *Id* ¶¶ 18-24. Plaintiff has provided no information for the FBI to reasonably conclude that responsive would reside outside the records system, and there is no indication from the records system search efforts that responsive records would reside in any other FBI system or location. *Id*. ¶ 24. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. *Id*.

In sum, because the FBI "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested," *Clemente*, 867 F.3d at 117, it is entitled to summary judgment with respect to the adequacy of the search.

## II.    The FBI Appropriately Applied Exemption 5 to Withhold Attorney-Client Privileged <u>Information.</u>

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents that would be privileged in civil discovery, including materials protected by the attorney-client privilege. *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001). Here, the FBI is withholding responsive records under the attorney-client privilege. Seidel Decl. ¶ 46.

That privilege "protects confidential communications from client to attorney, and from attorney to client." *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016). "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place and would consequently be deprived of sound legal advice." *Id.* "The [attorney-client] privilege applies only to '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance,' and to an attorney's 'communication [to the client] based on confidential information provided by the client[.]'" *Id.* at 231 (citation omitted). "In this context, the 'client' is the agency and its officials." *Id.* "And those officials may be either 'high-level agency personnel' or 'lower-echelon employees.'" *Id.*

Here, the FBI appropriately applied the attorney-client privilege to protect against disclosure of confidential communications between the FBI and employees of another government agency, as well as confidential communications among attorneys for the FBI and the Department of Justice with employees of the FBI. Seidel Decl. ¶ 47. The FBI has also withheld a communication between an FBI Special Agent and a senior legal advisor from another government agency relating to the criminal case that is the subject of Plaintiff's FOIA request. *Id.* The communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship and were made for the purpose of securing legal assistance or advice in relation to government legal positions. *Id.* Release of this withheld records would call into question the FBI's commitment to withhold confidential information and would dissuade other agencies from fully sharing confidential information with the FBI in the future. *Id.* Further, disclosure would provide inappropriate advantages to individuals seeking to take legal action against the government or to those who are targeted for prosecution by the government. *Id.* It would provide information traditionally privileged in a legal context and disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies. *Id.* Accordingly, the FBI appropriately applied Exemption 5 to withhold records subject to the attorney-client privilege.

## III.   All Responsive Records Were Compiled for Law Enforcement Purposes Under <u>Exemption 7.</u>

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd*

*Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002)). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where, as here, "the agency's principal function is law enforcement, courts are 'more deferential' to the agency's claimed purpose for the particular records." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)).

The records at issue meet the threshold to qualify as law enforcement records. The FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States. Seidel Decl. ¶ 27. "Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell*, 164 F.3d at 32. The FBI determined that all records relevant to Plaintiff's this request were compiled to document the FBI's assistance with an investigation into the murder of a Jefferson County Deputy Sheriff. Seidel Decl. ¶ 27.

## IV. <u>The FBI Appropriately Withheld Information Under Exemption 7(A)</u>

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes [when disclosure] . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records

confidential, lest the agencies be hindered in their investigations." *Nat'l Lab. Rels. Auth. v. Robbins Tire & Rubber Co*., 437 U.S. 214, 224 (1978). To justify the application of Exemption 7(A), the agency must demonstrate that: (1) a law enforcement proceeding is pending or prospective; and (2) disclosure of the information could reasonably be expected to cause some articulable harm to the proceeding. *Voinche v. FBI*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

To satisfy this burden, the agency "need not submit declarations that reveal the exact nature and purpose of its investigations." *Blackwell v. FBI*, 680 F. Supp. 2d 79, 94 (D.D.C. 2010). In fact, "Exemption 7(A) exists precisely to shield that sort of revelation." *Id.* Accordingly, documents are exempt under Exemption 7(A) where disclosure "could reveal much about the focus and scope of the [agency's] investigation." *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996); *Mendoza v. DEA*, 465 F. Supp. 2d 5, 11 (D.D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation.").

The FBI relied on Exemption 7(A) to protect information which, if disclosed, could reasonably be expected to interfere with pending criminal case. Seidel Decl. ¶¶ 31-33. "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. Dep't of Just.*, 218 F.3d 760, 762 (D.C. Cir. 2000). Specifically, the FBI invoked Exemption 7(A) to withhold non-public information about its involvement in the investigation of a Jefferson County Police Sherriff. Seidel Decl. ¶ 27. This includes information that pertain to pending law enforcement proceedings and the ongoing

prosecution of Johnson. *Id.* ¶ 33. Thus, the FBI appropriately withheld information under Exemption 7(A) relating to Johnson's criminal case.

## V.    The FBI Appropriately Withheld Information Under Exemptions 6 and 7(C).

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  It "requires a court to 'pursue two lines of inquiry,' first determining whether the records at issues are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  "The term 'similar files' is to be construed broadly and includes any 'disclosure of information which applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).   Exemption 6 has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA,* 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

If the threshold requirement of "personnel and medical files and similar files" is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). If a requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time."

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld.  *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Similarly, Exemption 7(C) exempts "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'"  *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Reps. Comm.*, 489 U.S. at 756).  Where the information in question, if any, "was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C)," courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."  *Roth*, 642 F.3d at 1173.

As explained below, the FBI appropriately withheld, under Exemptions 6 and 7(C), names and identifying information of FBI Special Agents and professional staff, third parties who provided information during the FBI's investigation, third parties merely mentioned, third parties

of investigative interest, names and identifying information of personnel from other federal agencies, the names and identifying information of local and foreign law enforcement, and the names and identifying information of third parties with criminal records. Seidel Decl. ¶¶ 48-62. In each of these circumstances, releasing the names of the individuals in these records could subject them to harassment or worse, threaten their safety. *Id.* Thus, the FBI easily established foreseeable harm that would occur from releasing this information. *See Jud. Watch, Inc. v. Dep't of Just*, Civ. A. No. 23-1485 (CRC) 2024 U.S. Dist. LEXIS 158373, at *18 (D.D.C. Sept. 4, 2024) ("foreseeable harm is 'manifest' where disclosure would cause ridicule or harassment"); *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, Civ. A. No. 22-3419 (CKK), 2024 U.S. Dist. LEXIS 131312, at *24 (D.D.C. Jul. 25, 2024) (explanation that employees "would be subject to annoyance, threats, embarrassment" if their names were released satisfies foreseeable harm under Exemption 6); *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021) ("when invoking Exemption 7(C), an agency need not establish much more than the fact of disclosure to establish foreseeable harm").

### A.    Names And Other Identifying Information of FBI Special Agents and Other FBI Professional Staff, Non-FBI Government Personnel, and Local and Foreign Law Enforcement Personnel.

The FBI appropriately redacted the names and other identifying information of FBI Special Agents and other FBI staff, non-FBI government personnel, and local and foreign law enforcement personnel. Seidel Decl. ¶¶ 52-54, 60-61.

FBI Special Agents investigate criminal and national security violations and have a privacy interest in their identities because the release of their identities relating to a particular investigation or investigative activity could trigger hostility toward that agent. *Id.* ¶ 53. People who are arrested or even investigated by a particular agent are likely to carry a grudge against that agent that could last for many years. *Id.* More importantly, disclosing a Special Agent's identity would provide

opportunities for the individuals targeted, or their sympathizers, to inflict violence on the agent based on his or her participation in a particular investigation. *See id.*; *see also Solers, Inc. v. IRS*, 827 F.3d 323, 332-33 (4th Cir. 2016) (holding that IRS employees and other government employees have substantial privacy interests in withholding their names in connection with particular investigations due to potential for harassment or embarrassment); *Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 179 (D.D.C. 2014) (finding disclosure of identities of ATF personnel may hinder the agency's ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and be an invasion of privacy as contemplated by the exemption).

On the other side of the scale, there is no discernable public interest to be advanced by revealing the Special Agents' names or other personal identifiable information, because their identities would not themselves significantly increase the public's understanding of the FBI's operations. *See* Seidel Decl. ¶ 53; *Long v. Off. of Pers. Mgmt.,* 692 F.3d 185, 194 (2d Cir. 2012) (holding that the agency properly withheld both names and duty-station information for over 800,000 federal employees in five sensitive occupations, including correctional officer, U.S. Marshal, internal revenue agent, and officers for game law enforcement, immigration inspection, customs and border interdiction, and border protection); *McGehee v. Dep't of Just.*, 800 F. Supp. 2d 200, 233 (D.D.C. 2011) (stating that disclosure of the names of FBI agents and victims involved in the Jonestown Massacre would not "shed light on the FBI's performance of its statutory duties").

Similarly, the FBI professional staff members were, and likely still are, in positions of access to information regarding law enforcement investigations and could become targets of harassment if their identities become known. Seidel Decl. ¶ 54. These FBI professionals have substantial privacy interests in not having their identities released. *Id*. There is no counter-

balancing public interest in having their identifying information released to Plaintiff.  *See id.*  The

withholding of this type of information has routinely been upheld.  *See, e.g., Rosenberg v. Immigr.

& Customs Enf't*, 959 F. Supp. 2d 61, 75 (D.D.C. 2013) (finding that the FBI was entitled to

summary judgment with respect to use of Exemptions 6 and 7(C) to withhold names and other

identifying information of FBI Special Agents and support staff); *Dent v. Exec. Off. for U.S. Att'ys*,

926 F. Supp. 2d 257, 269–70 (D.D.C. 2013) (stating that the FBI correctly withheld "'names of

and/or identifying information of FBI [Special Agents . . .] and support personnel who were

responsible for conducting, supervising, and/or maintaining the investigative activities reported in

the documents responsive to plaintiff's request'"); *Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 47

(D.D.C. 2009) (upholding Exemption 7(C) to protect agency employees, including support

personnel, because "Exemption 7(C) protects the privacy interests of all persons mentioned in law

enforcement records").

     Likewise, there is no readily apparent public interest to be served by releasing identifying

information of non-FBI government employees or local and foreign law enforcement personnel

who assisted the FBI in the investigation of the criminal case that is the subject of the FOIA

request. Seidel Decl. ¶¶ 60-61; *Barouch v. Dep't of Just.*, 962 F. Supp. 2d 30, 59–61 (D.D.C. 2013)

(concluding that U.S. Marshal's Service withholdings of government employees' names,

addresses, and other personally identifying information were proper under Exemption 7(C)).  Just

as with the FBI special agents and professional staff, releasing identifying information of personnel

from other government agencies and from local and foreign law enforcement agencies would

subject these individuals to harassment, and, potentially, reprisal from those who disapprove of

these employees' work. Seidel Decl. ¶¶ 60-61. Accordingly, withholding the aforesaid names and

identifying information is proper.

### B.    Name and Identifying Information of a Third Party Who Provided Information.

The FBI appropriately withheld the names and personally identifying information of individuals who voluntarily provided information to the FBI during its investigation.  Seidel Decl. ¶¶ 55-57.  Publicly revealing that the identities of those who have provided information law enforcement could carry a negative connotation and make such individuals targets for retaliation. *Id*.  Releasing such individuals' names could subject them to harassment, legal or economic detriment, possible physical harm, or even death.  *Id.*  Moreover, because release of this information would not meaningfully increase the public's understanding of the FBI's operations and activities, the FBI properly withheld this information.  *See id.*; *see also Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 97 (D.D.C. 2014) (finding that the disclosure of third parties who provided information to the FBI would constitute an unwarranted invasion of privacy considering the fact that individuals interviewed by the FBI often fear that if their identities will be exposed, they will face harassment, threats, and possible physical harm, and must be assured that their identities will be held in confidence).

### C.    Names and Identifying Information of Individuals of Investigative Interest and with Criminal Records.

The FBI withheld identifying information pertaining to individuals of investigative interest and with criminal records. Seidel Decl. ¶¶ 59, 62.  Being identified as a subject of FBI investigative interest or someone with a criminal record carries a strong negative social stigma.  *Id*.  Release of the identities of these individuals would subject them to possible harassment or embarrassment, and undue public attention.  *Id.*  Further, disclosure of such information would likely result in professional and social repercussions due to the negative stigma that comes with being subject to a law enforcement investigation or with having a criminal record.  *Id.*

The FBI properly invoked Exemptions 6 and 7(C) to withhold this information because these individuals maintain substantial privacy interests in not having the aforesaid information publicly disclosed. *Id*. Disclosing this information would not significantly increase the public's understanding of the FBI's operations and activities. *Id.*; *see also Clay v. Dep't of Just.,* 680 F. Supp. 2d 239, 247 (D.D.C. 2010) ("[E]xemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants . . . . [S]uch third-party information is categorically exempt from disclosure. . .[absent] an overriding public interest." (citing *Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 255–56 (D.D.C. 2009)). Accordingly, the FBI appropriately withheld names and identifying information of individuals who were of investigative interest or who have a criminal record.

### D.    Name and Identifying Information of Third Parties Merely Mentioned.

Finally, the FBI withheld the names and other identifying information of third parties merely mentioned within the records at issue. Seidel Decl. ¶ 58. These individuals were only tangentially mentioned in the files and was not of investigative interest to the FBI. *Id.* The FBI can withhold such information "unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker v. Dep't of Just*., 349 F.3d 657, 661 (D.C. Cir. 2003). The core issue is whether the release of third-party information would shed light on whether the government engaged in any illicit conduct. *Mezerhane de Schnapp v. U.S. Citizenship & Immigr. Servs.*, 67 F. Supp. 3d 95, 104 (D.D.C. 2014) ("Disclosure of the names of [third-party] individuals would not get Mezerhane any answers about possible agency misconduct, and would infringe upon the privacy interests of third parties not before the Court"); *see also Martin v. Dep't of Just*., 488 F.3d 446, 457 (D.C. Cir. 2007) ("[T]hird parties who may be mentioned in investigatory files . . . have an obvious and substantial privacy interest in their information.").

Disclosing these individuals' identifying information could subject them to harassment or criticism and focus derogatory inferences and suspicion on them. Seidel Decl. ¶ 58. "As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." *Lazaridis v. Dep't of State,* 934 F. Supp. 2d 21, 38 (D.D.C. 2013). Releasing information about individuals merely mentioned in an FBI investigative file would not increase the public's understanding of the FBI's operations and activities, let alone inform the public about government misconduct. Seidel Decl. ¶ 58. Accordingly, the FBI appropriately withheld the identifying information of individuals only tangentially mentioned in the records. *See SafeCard Servs.*, 926 F.2d at 1206 ("We now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure.").

## VI.     The FBI Appropriately Withheld Information Under Exemption 7(D).

FOIA Exemption 7(D) permits the withholding of "records or information compiled for law enforcement purposes" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished" by such a source. 5 U.S.C. § 552(b)(7)(D). "Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions," *Billington v. Dep't of Just.*, 301 F. Supp. 2d 15, 21 (D.D.C. 2004), and does not require a balancing of public and private interests. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1185 (D.C. Cir. 2011).

The exemption's protections extend to the "information furnished by a confidential source" to law enforcement authorities during a criminal investigation. *See Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 48–49 (D.D.C. 2009); *see also Parker v. Dep't of Just.*, 934 F.2d 375, 380 (D.C. Cir. 1991) ("[O]nce the agency receives information from a 'confidential source' during the course of

a legitimate criminal investigation . . . *all* such information obtained from the confidential source receives protection.") (emphasis in original). Indeed, Exemption 7(D) was enacted "to assist federal law enforcement agencies" in their efforts "to obtain, and to maintain, confidential sources, as well as to guard the flow of information to these agencies." *Parker*, 934 F.2d at 380. In determining the applicability of the exemption, "the question is . . . whether the particular source spoke with an understanding that the communication would remain confidential." *Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993); *see also Miller v. Dep't of Just.*, 872 F. Supp. 2d 12, 26 (D.D.C. 2012) (concluding that the focus should always be on whether the source of the information spoke with the understanding of confidentiality, not whether the document is generally thought to be confidential). Confidentiality exists, for the purpose of Exemption 7(D), when "the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent the [agency] thought necessary for law enforcement purposes." *Miller*, 872 F. Supp. 2d at 26. If the production of criminal investigative records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by" such a source, that ends the matter, and the agency is entitled to withhold the records under Exemption 7(D). *Parker*, 934 F.2d at 380.

Significantly, Exemption 7(D) applies not only to information obviously identifying the source, such as name and address, but to all information that would tend to reveal the source's identity. *See Stone v. Def. Investigative Serv.*, 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting information "so singular that to release it would likely identify the individual"). The exemption's protections also extend to the "information furnished by a confidential source" to law enforcement authorities during a criminal investigation. *See Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 48 (D.D.C. 2009); *Albuquerque Pub. Co. v. Dep't of Just.*, 726 F. Supp. 851, 857 (D.D.C. 1989)

(holding that Exemption 7(D) "obviously" applied to protect from disclosure "two tape recordings, which consist entirely of information obtained from a confidential, wired informant"); *see also Parker v. Dep't of Just.*, 934 F.2d 375, 380 (D.C. Cir. 1991) ("[O]nce the agency receives information from a 'confidential source' during the course of a legitimate criminal investigation . . . *all* such information obtained from the confidential source receives protection."). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, *Ortiz v. Dep't of Health & Hum. Servs.*, 70 F.3d 729, 733 (2d Cir. 1995), and after the source has died. *Campbell v. Dep't of Just.*, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

The FBI applies Exemption 7(D) to incentivize people and foreign government agencies to provide information to the FBI with complete candor. Seidel Decl. ¶¶ 64, 66. Without the guarantee of confidentiality, sources may hedge or withhold information because of fear that their cooperation with the FBI will later be made public. *Id*. Releasing a source's identity could forever eliminate that source as a future means of obtaining information and would also have a chilling effect on the activities and cooperation of other sources. *Id*.

Thus, invoking Exemption 7(D), the FBI withheld names, identifying information of, and information provided by persons and a foreign government agency under an implied or express assurance of confidentiality. *Id*.; *see also, e.g., Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (holding that information provided under an express assurance of confidentiality is exempt from disclosure); *Schoenman v. FBI,* 763 F. Supp. 2d 173, 200 (D.D.C. 2011) (the FBI properly invoked Exemption 7(D) where it "explain[ed] in a reasonably detailed and non-conclusory manner, that the information at issue in each instance was received in connection with an express grant of confidentiality"); *Borda v. Dep't of Just.*, 245 F. Supp. 3d 52, 60–61 (D.D.C. 2017) (concluding that the defendant properly applied Exemption 7(D) to withhold the names and other

identifying information of persons who provide information under an implied assurance of confidentiality because the nature of the offenses committed by the plaintiff meant that the sources would likely suffer harm if their identities were disclosed, and therefore it was reasonable to expect that they provided information under an assurance of confidentiality); *Blackwell v. FBI*, 680 F. Supp. 2d 79, at *95 (D.D.C. 2010) (upholding the FBI's application of Exemption 7(D) to information provided by a foreign government agency under an implied assurance of confidentiality). The FBI has explained that releasing this information would "endanger confidential sources and would "cause great detriment to the FBI's ability to recruit and maintain reliable sources" and thus the foreseeable harm that would come from releasing information about these confidential sources is "self-evident." *Callimachi v. FBI*, 583 F. Supp. 3d 70, 89 (D.D.C. 2022).

**VII.    The FBI Appropriately Withheld Material Under Exemption 7(E).**

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). In fact, the exemption "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009). Generally, techniques and procedures "not well known to the public" have been found to be exempt from disclosure under Exemption 7(E). *See, e.g., Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004). Even records containing commonly known procedures have been

protected from disclosure "if the disclosure could reduce or nullify their effectiveness." *CREW v. Dep't of Just.*, 870 F. Supp. 2d 70, 85 (D.D.C. 2012). Importantly, to establish foreseeable harm under Exemption 7(E), the FBI simply needs to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42.

Within the responsive records, the FBI applied Exemption 7(E) to protect non-public investigative techniques and procedures that the FBI uses to carry-out its law enforcement function, and non-public details about techniques and procedures that are otherwise known to the public. Seidel Decl. ¶¶ 67-69. Specifically, the FBI is withholding under Exemption 7(E) database information and printouts, along with information pertaining to the FBI's cooperation with a foreign law enforcement agency. *Id.* ¶¶ 70-78.

### A.    Database Information and Printouts.

The FBI protected the names of sensitive investigative databases and database search results located through queries of these non-public databases. *Id.* ¶¶ 70-74. Releasing the identities of these databases and any information in these databases would provide criminals with insight into the tools and resources the FBI uses to conduct criminal and national security investigations, along with the nature and utility of these databases, and the scope of information stored within them. *Id.* ¶¶ 70-71. Revealing this information could disclose when and why the FBI queries the databases and key information about FBI investigative strategies because different databases contain different information. *Id.* ¶ 71-72. Revealing this information could also disclose the scope of intelligence on particular subjects, expose possible intelligence gaps, and reveal the types of information the FBI deems most useful. *Id.* ¶¶ 71-73. This, in turn, would allow criminals to make informed decisions on how to evade detection and disruption by the FBI and how to structure their behavior or take countermeasures to deprive the FBI of useful intelligence,

thereby jeopardizing FBI investigations. *Id.* Finally, revealing information about these databases could reveal exactly where the FBI stores and from where it obtains valuable investigative data, rendering the databases attractive targets for compromise or to otherwise destroy information stored within them. *Id.*

Thus, the FBI properly invoked Exemption 7(E) to protect the names of sensitive and non-public databases and the search results obtained through queries of these databases. *See, e.g., Shapiro v. Dep't of Just.*, 507 F. Supp. 3d 283, 333 (D.D.C. 2020) ("[A]ccess to information about FBI databases could give criminals and adversaries information about the FBI's programs that, in turn, could aid them in avoiding detection or gaining access to the FBI's systems.").

**B.      Cooperation with a Foreign Law Enforcement Agency**

The FBI withheld detailed non-public information within a request for assistance it made to a foreign law enforcement agency to locate and interview a third-party individual concerning his knowledge of this criminal investigation. *Id.* ¶ 75. The information withheld is directly related to what investigative assistance the FBI requested from the foreign government agency and what process the FBI used to make this request.  *Id.*  ¶ 76. Disclosure could reveal non-public FBI techniques by revealing coordination (or lack thereof) between a specific foreign law enforcement agency and the FBI in a particular matter. *Id.* Withholding this information, among other things, prevents disclosure of the FBI's capabilities and vulnerabilities when it comes to coordination and information sharing with certain foreign law enforcement agencies, as well as protecting foreign agencies themselves, who may face adverse consequences in their own countries if it is made known they assisted the United States in a criminal investigation. *Id.* ¶¶ 76-77; *see also Sanders v. FBI,* Civ. No. 20-3672 (ABJ), 2022 WL 888191, at *7 (D.D.C., Mar. 25, 2022) (upholding the

FBI's application of Exemption 7(E) to information detailing cooperation with a foreign law enforcement agency).

## VIII.   **The FBI Produced All Non-Exempt Reasonably Segregable Information.**

Although an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); see 5 U.S.C. § 552(b) (requiring that "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at, 260. Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the material to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd*, 475 F.3d at, 391.

The FBI complied with the standard set forth in a recent controlling decision. *See Leopold v. Dep't of Just.*, 94 F.4th 33 (D.C. Cir. 2024). In 2016, Congress enacted the FOIA Improvement Act, which further limited exemption withholdings. "Under this limit, the agency bears the burden of showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption' or that 'disclosure is prohibited by law.'" *Id.* (quoting 5 U.S.C. § 552(a)(8)(A)(i)); *see also Reps. Comm*, 3 F.4th at 369. *Leopold* noted that "whether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries." 94 F.4th at 37. This inquiry also requires that consideration of whether there is foreseeable harm from disclosure of otherwise exempt information, including whether partial disclosure of information is possible. *Id.* at 38.

The FBI performed the segregability analysis required under *Leopold* to determine whether partial disclosure of information is possible. The FBI determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages was so intertwined with exempt material that no information could be reasonably segregated for release. *Id*. ¶ 80. The FBI considered foreseeable harm as it conducted its segregability analysis. *Id*. ¶¶ 79. When reviewing each record, the FBI considered whether any portion of the record was exempt, and if so, whether foreseeable harm would result from releasing the relevant portion despite the exemption. *Id*. In the above sections and accompanying declaration, the FBI explained its foreseeable harm analysis for each exemption invoked. *Id.*

Accordingly, the FBI determined that it could not release any additional material without causing foreseeable harm to the interests that the cited FOIA exemptions protect.

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendant's favor.

Dated: December 16, 2024                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____*/s/ Fithawi Berhane*_____
    FITHAWI BERHANE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-6653

*Attorneys for the United States of America*