UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY ALPER,

        *Plaintiff*,

   v.

DEPARTMENT OF JUSTICE,

        *Defendant.*

No. 24-cv-1837 (DLF)

**MEMORANDUM OPINION**

Ty Alper filed this lawsuit alleging that the Federal Bureau of Investigation (FBI) unlawfully withheld various records under the Freedom of Information Act (FOIA), 5 U.S.C. §552. Before the Court is the government's Motion for Summary Judgment, Dkt. 12, and Alper's Cross Motion for Summary Judgment, Dkt. 15. For the reasons that follow, the Court will deny both motions without prejudice.

**I.    BACKGROUND**

Ty Alper is a lawyer and faculty member at the University of California, Berkeley School of Law, where he serves as the Co-Director of the Berkeley Law Death Penalty Clinic. Alper represents Toforest Johnson, a man who was convicted of murdering a police officer and sentenced to death in 1998 in Alabama. Alper Decl. ¶¶ 1–3, 31, Dkt. 15-3. Alper has represented Johnson since 2002, and Johnson currently has two pending petitions: one postconviction petition in state court as well as a federal habeas corpus petition in the U.S. District Court for the Northern District of Alabama. *Id.* ¶¶ 2, 48.

In February 2024, Alper submitted a FOIA request to the FBI. *See* Def.'s Statement of Facts ¶ 1, Dkt. 12-2. Alper sought all records regarding the FBI's involvement in Johnson's

prosecution. *Id.* The FBI identified approximately 513 pages of potentially responsive records by May 2024. *Id.* ¶ 3. In September, the FBI informed Alper that it had completed its review and was withholding the records in their entity, invoking FOIA exemption 7(A), and underlying FOIA exemptions 5, 6, 7(C), 7(D), and 7(E). *Id.* ¶ 4. The FBI then moved for summary judgment in December 2024, Dkt. 12, and Alper cross-moved for summary judgment in January 2025, Dkt 15.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, the Court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (citation omitted). The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and must also explain why any enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld information, *see Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the

statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126. Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and if neither contradictory record evidence nor evidence of bad faith calls it into question, *see Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   ANALYSIS

The FBI withholds all documents in their entirety under Exemption 7(A). It also invokes Exemptions 5, 6, 7(C), 7(D), and 7(E) to withhold some documents in part and others in full.

### A.   Exemption 7(A)

Exemption 7 allows the government to withhold documents that were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Documents are compiled for law enforcement purposes if "the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jud. Watch v. Rossotti*, 285 F. Supp. 2d 17, 24 (D.C. Cir. 2003) (internal quotation marks omitted). Alper concedes that these records were compiled for law enforcement purposes. Alper Mot. for Summ. J., at 7 n.5, Dkt. 15-1.

Once the threshold inquiry of Exemption 7 is satisfied, an agency may withhold documents under Exemption 7(A) if their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see, e.g. Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 928 (D.C. Cir. 2003) (finding reasonable expectation of interference when releasing documents could enable subjects of investigation "to better evade the ongoing investigation and

more easily formulate or revise counter-efforts"). An agency may invoke Exemption 7(A) only if an enforcement proceeding is either "reasonably anticipated," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007), or "pending at the time of [a court's] decision, not only at the time of the initial FOIA request," *Citizens for Resp. & Ethics in Washington (CREW) v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014).

The FBI points to two pending enforcement proceedings—Johnson's habeas petition in federal court and his petition for postconviction relief in state court—and the reasonably anticipated possibility of a new criminal trial in Alabama, should either pending petition be granted. Seidel Decl. ¶¶ 31–32, Dkt. 12-3. Alper points out that the State of Alabama, not the FBI, is responsible for defending Johnson's conviction in these proceedings. Alper Decl. ¶ 27. But the D.C. Circuit has repeatedly affirmed that enforcement proceedings are not limited to federal proceedings or the enforcement of federal law. *Bevis v. Dep't of State*, 801 F.2d 1386, 1388–89 (D.C. Cir. 1986) (invoking Exemption 7(A) for law enforcement proceeding taking place in El Salvador); *see also Shaw v. FBI*, 749 F.2d 58, 64 (D.C. Cir. 1984) (holding that "authorized federal investigation into the commission of state crime [the JFK assassination] qualifies" as an enforcement proceeding). Here, the FBI previously assisted the Alabama authorities in the investigation of Johnson's alleged murder of a Jefferson County Deputy Sheriff. Seidel Decl. ¶ 27.

Habeas proceedings "complicate[] the typical Exemption 7(A) concerns" because they are often brought long after the case concludes and after the government has already had the opportunity to present its case in court. *See Sarno v. DOJ*, 278 F. Supp. 3d 112, 126 (D.D.C. 2017). But here, Johnson challenges his actual conviction in federal and state courts, so the

4

government must "defend [the State's] prosecution and [Johnson's] convictions." *Id.* And should relief be granted, it is reasonably likely that Johnson would receive a new trial. *Id.*

Although the FBI has pointed to an ongoing proceeding, the analysis does not end there. "Exemption 7(A) . . . is designed to block the disclosure of information that will genuinely harm the government's case in an enforcement proceeding or impede an investigation." *North v. Walsh*, 881 F.2d 1088, 1098 (D.C. Cir. 1989). On the existing record, the Court cannot conclude that the FBI has met its burden to explain how disclosure will harm the government's case. For one, Alper has identified particular FBI documents that Johnson's defense team already possesses. Alper Decl. Ex. E, Dkt. 13-1; Alper Suppl. Decl. Ex. A, Dkt. 20-1. Given the similarity between those records and the descriptions of withheld documents in the Vaughn index—specifically, communications with a foreign agency requesting assistance in interviewing a witness—Alper has adequately demonstrated that the previously-disclosed records "match" certain withheld records. *Jud. Watch, Inc. v. Dep't of Def.*, 963 F. Supp. 2d 6, 13 (D.D.C. 2013). Because the FBI has not explained "how its investigation will be impaired by the release of information that the targets of the investigation already possess," it has not properly invoked Exemption 7(A). *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 108 (D.D.C. 2009) (emphasis omitted).

The Court also is not persuaded that disclosure would genuinely interfere with future proceedings. This case is 30 years old, and the State has already had the opportunity to present its case without interference. Generalized concerns about the potential for witness tampering, evidence destruction, and the thwarting of the government's trial strategy, *see* Seidel Decl. ¶ 40, are not as compelling when the witnesses have already been disclosed, the evidence is decades old, and the government has revealed its evidence and strategy in an earlier trial. The Court thus

rejects the FBI's invocation of Exemption 7(A) to withhold law enforcement records in full and will deny the government's motion for summary judgment on this ground.

The government is directed to disclose all documents that match those that Alper has already identified as previously disclosed. In addition, the government must reevaluate all other records to determine whether they actually pose a risk of interference with enforcement proceedings. Should the government continue to withhold material under this exemption, it must justify any withholding with a supplemental declaration.

### B.    Exemptions 6 and 7(C)

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7). When an agency invokes both exemptions, courts "focus" on Exemption 7(C) because it "establishes a lower bar for withholding material." *CREW v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (citation omitted). Under these exemptions, the FBI withheld the names of FBI agents and staff, the names and identifying information of personnel from other agencies and local and foreign law enforcement, and the names of third parties who were mentioned, investigated, or assisted in the investigation. Seidel Decl. ¶¶ 48–62. According to the Vaughn index, withheld documents include third-party interviews, documents provided by third parties, leads, and FBI memoranda documenting results from interviews. Vaughn Index, Dkt. 19-1.

*FBI Agents and Staff.*  First, the FBI protects the names and identifying information of FBI special agents and other FBI professional staff.  Seidel Decl. ¶¶ 52–54.  These individuals have a substantial privacy interest "in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984).  Courts in this circuit routinely protect the names of both FBI special agents and professional employees.  *See Concepcion v. FBI*, 606 F. Supp. 2d 14, 16 (D.D.C. 2009) (recognizing the privacy interest for FBI employees and noting that protection "under similar circumstances routinely is upheld"); *Stone v. FBI*, 727 F. Supp. 662, 663 n.1 (D.D.C. 1990) (protecting identities of FBI Special Agents and clerical employees who investigated Robert F. Kennedy's assassination).

*Third Parties*.  The FBI also seeks to withhold the names and identifying information of third parties who provided information, who were merely mentioned in the investigative records, who were of investigative interest, and those with criminal records.  Seidel Decl. ¶¶ 55–59, 62.  Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *Bast v. DOJ,* 665 F.2d 1251, 1254 (D.C. Cir. 1981).  The privacy interests of civilian third parties are substantial. *See Holy Spirit Ass'n for Unification of World Christianity v. FBI*, 683 F.2d 562, 563–65 (D.C. Cir. 1982) (withholding identities of individuals providing information to law enforcement); *Quiñon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (protecting identity of informants and other individuals involved in an investigation).

*Personnel from Other Agencies or Law Enforcement.*  Finally, the FBI seeks to withhold the names and identifying information of personnel from other federal agencies and from local and foreign law enforcement.  Seidel Decl. ¶¶ 60–61.  Although the privacy interests of government employees may not be as high as private third parties, they still have significant interests in not being named in connection with criminal proceedings.  *See Concepcion*, 606 F. Supp. 2d at 16.

Alper responds that any purported privacy interests have been undermined because it is likely that many of these documents with unredacted names have already been disclosed. Alper Decl. ¶¶ 69–72; Alper Suppl. Decl. ¶ 4. He further points out that some individuals also testified at Johnson's trial and were discussed extensively in newspaper articles during the trial period. Alper Decl. ¶¶ 69–72 (noting interviews and newspaper clippings). But testimony at trial does not waive privacy interests. *Jurdi v. United States*, 485 F. Supp. 3d 83, 94 (D.D.C. 2020). And courts have consistently allowed withholding under this exemption even when the information might already have been made available through other sources. *Harrison v. Exec. Off. for U.S. Att'ys*, 377 F. Supp. 2d 141, 147–48 (D.D.C. 2005) (protecting names and addresses of criminal defendants, case captions and numbers, attorney names and addresses, and case initiation, disposition, and sentencing dates, even though information could be found by searches of public records); *Billington v. DOJ*, 11 F. Supp. 2d 45, 61 (D.D.C. 1998) (finding that an "agency is not compelled to release information just because it may have been disclosed previously"), *vacated in part on other grounds*, 233 F.3d 581 (D.C. Cir. 2000); *see DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 764, 767 (1989) ("[O]ur cases have also recognized the privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public."). This is especially true when, like here, any previous disclosure of names occurred many years earlier. *Assassination Archives & Rsch. Ctr. v. CIA*, 903 F. Supp. 131, 133 (D.D.C. 1995) (finding that passage of thirty or forty years "may actually increase privacy interests, and that even a modest privacy interest will suffice" to protect identities).

On the current record, the Court cannot conclude that any public interest outweighs the individuals' privacy interests. *See ACLU*, 655 F.3d at 12. It is well established that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to

be informed about what their government is up to." *Sussman*, 494 F.3d at 1115 (citation omitted). This public interest includes information supporting the "potential innocence of individuals sentenced to death." *Roth v. DOJ*, 642 F.3d 1161, 1176 (D.C. Cir. 2011). Although Alper alludes to this public interest, his generalized claims are insufficient to override the privacy interests asserted. He has not identified, even with the records he possesses, how disclosure of the names of FBI agents and staff, other law enforcement agents, or third parties "would substantially corroborate" or lead to information in support of Johnson's claim of innocence. *Id.* at 1178. If a second round of briefing is necessary, Alper may provide a supplemental declaration. But, at least on the existing record, the Court concludes that the FBI's withholding under Exemption 7(C) is proper, subject to the Court's segregability analysis.

    **C.**    **Exemption 7(D)**

Exemption 7(D) protects information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (citation and internal quotation marks omitted). Here, the FBI withheld information related to "how the foreign government agency gleaned specific information, and the results of the inquiries with their own country." *See* Seidel Decl. ¶ 66.

The Court acknowledges the likelihood that the FBI's involvement with a foreign agency implicates privacy and cooperation interests. Even so, the government has not demonstrated through its declaration that revealing the agency's foreign assistance would degrade trust and reduce cooperation in the future. The cooperative efforts concluded approximately thirty years

9

ago, and from what the Court can glean, that cooperation was limited to interviewing one witness who happened to temporarily be in the foreign country. Alper Decl. ¶¶ 66–68. The foreign agency's "relation to the crime" was therefore distant, and the FBI has not proffered other conditions that would support an inference of confidentiality. *Roth*, 642 F.3d at 1184. The Court thus will deny summary judgment to both parties on Exemption 7(D) and allow the government to supplement the record to provide sufficient details to conclude that the witness "spoke with an understanding that the communication would remain confidential." *Id*.

### D. Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The exemption does not ordinarily protect "routine techniques and procedures already well known to the public." *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979) (citation and internal quotation marks omitted); *see also Jud. Watch v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004). It does, however, protect "confidential details of . . . program[s]" if only their "general contours [are] publicly known." *Sussman*, 494 F.3d at 1112 (citing *Blanton v. DOJ*, 64 F. App'x 787, 788–89 (D.C. Cir. 2003) (per curiam)); *see also Shapiro v. DOJ*, 893 F.3d 796, 801 (D.C. Cir. 2018) (permitting the government to withhold documents that would disclose the way in which the FBI uses a particular publicly known database). In this Circuit, Exemption 7(E) applies if the disclosure of information related to even "commonly known procedures" could "reduce or nullify their effectiveness." *Vazquez v. DOJ*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (citation and internal

quotation marks omitted), *aff'd*, No. 13-5197, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013) (per curiam).

The majority of the documents withheld under 7(E) contain "non-public information within a request for assistance [the FBI] made to a foreign law enforcement agency." Seidel Decl. ¶ 75. But the Vaughn Index describes these documents as communications from the DOJ to an FBI special agent providing legal guidance. Vaughn Index 7–8. And the FBI does not invoke this exemption for the documents labeled in the Vaughn Index as documents "requesting assistance from a foreign law enforcement agency." *Id.* at 7. In sum, the Court is not able to conclude that the FBI properly invoked the exemption to withhold the identified documents.

Regarding the database checklist, courts have allowed invocation of 7(E) for FBI databases in the past, considering the low bar for this exemption. *Shapiro*, 893 F.3d at 800–01 (invoking Exemption 7(E) for commercially-available database when agency's search and management methods "are not generally known"). The FBI seeks to protect "the identities of investigative databases," Seidel Decl. ¶ 70, and the declaration provides a "logical explanation," *Shapiro*, 893 F.3d at 801, for why exposing these sensitive databases would risk circumvention of the law by revealing "the nature of their utility to FBI investigators and the scope of information stored," Seidel Decl. ¶ 71. This satisfies the low bar for withholding under Exemption 7(E).

### E. Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," including the attorney work-

11

product, attorney-client, and deliberative process privileges. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citation and internal quotation marks omitted).

The attorney-client privilege incorporated into FOIA Exemption 5 "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Touarsi v. DOJ*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). In a governmental setting, the "client" may be the agency and its "attorney" the agency lawyer. *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). The FBI invoked the attorney-client privilege to withhold five communications between DOJ counsel and an FBI special agent regarding legal guidance. Vaughn Index at 7–8. Because these documents constitute legal advice for the agency from an agency lawyer, the FBI properly withheld them under Exemption 5 and the attorney-client privilege. *See* Seidel Decl. ¶ 47. Alper does not meaningfully challenge the FBI's withholdings under this privilege. His only opposition appears in a footnote in which he suggests "there is a strong likelihood that it mirrors the information contained in the FBI records previously provided to Mr. Johnson and his legal team." Alper Mot. for Summ. J., at 18 n.12. This is not enough. Alper's declarations do not even indicate that Johnson's team received materials with communications between the DOJ and the FBI. Thus, he has not made a showing sufficient to undermine the government's representations.

**F.   Segregability**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a presumption that they disclosed all

reasonably segregable material, *Sussman*, 494 F.3d at 1117. Here, the FBI withheld all responsive pages in full under Exemption 7(A) and determined that some records or portions of those records also required withholding under other exemptions. Seidel Decl. ¶ 80. Because the Court has rejected the FBI's withholding under Exemption 7(A), the Court cannot conclude that the agency released all reasonably segregable non-exempt portions of the documents. The FBI must conduct another line-by-line review of the withheld information to ensure that it has released all reasonably segregable non-exempt information, consistent with this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the government's Motion for Summary Judgment, Dkt. 12, is granted in part and denied in part, and Alper's Motion for Summary Judgment, Dkt. 15, is granted in part and denied in part.

Alper has established, and the government agrees, *see* Dkt. 12-4 at 37, that this FOIA case warrants expedited consideration to prevent "[t]he loss of substantial due process of rights," *id*. Accordingly, and consistent with the accompanying order, the parties shall meet and confer within the next 7 days in an effort to resolve the remaining issues. To the extent that the parties are unable to reach an agreement, they shall propose a schedule for further proceedings that ensures that the Court is able to resolve any remaining issues on an expedited basis.

_____
DABNEY L. FRIEDRICH
United States District Judge

May 27, 2025