IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY ALPER,

        *Plaintiff,*

v.                                                                    Civil Action No.  24-cv-1837 (DLF)

FEDERAL BUREAU OF INVESTIGATION,

        *Defendant.*

## DECLARATION OF SHANNON R. HAMMER

I, Shannon R. Hammer, declare as follows:

1.       I am currently the Assistant Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division, Federal Bureau of Investigation (FBI), located in Winchester, Virginia. I have held this position since January 2024. I served as the Acting Section Chief from May 2025 until early September 2025. I joined the FBI in October 2006, and prior to becoming the Assistant Section Chief of RIDS, I held the positions of Acting Assistant Section Chief of RIDS; Unit Chief of the National Security and Classification Operations Unit; Unit Chief of a Freedom of Information/Privacy Act (FOIPA) Operations Unit; and a supervisor in the Initial Processing Operations Unit. In those capacities, I had management oversight for the RIDS national security review program; enterprise declassification review compliance pursuant to Executive Order 13526, and classification reviews for civil and criminal discovery matters; and I oversaw the front-end operations of the FBI's FOIPA program.

2.       In my official capacity as Assistant Section Chief of RIDS, I supervise

approximately 210 FBI employees, supported by approximately 95 contractors, who staff a total of eight Federal Bureau of Investigation Headquarters (FBIHQ) units and two field operational service center units. RIDS collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.      Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation. The FBI submits this declaration in response to Plaintiff's "Renewed Motion for Summary Judgment and for Partial Reconsideration" ("Renewed Motion") filed on September 2, 2025. (ECF No. 26.) This declaration supplements, and incorporates by reference, the information previously provided in the declaration of Michael G. Seidel ("Seidel Declaration") filed on December 16, 2024 (ECF No. 12-3). This declaration provides additional justification for withholding information in part pursuant to FOIA Exemptions 6 and 7(C). The background of this matter is set forth in the previously filed Seidel Declaration and will not be fully recounted here. Only information directly relevant to the issues raised in Plaintiff's renewed motion are discussed herein. This declaration addresses the following: (1) the FBI's withholding of the names of FBI personnel

who authored the FBI memorandum dated December 1, 1997; (2) the FBI's withholding of the names of the third parties referenced within the documents concerning Michael Ansley; (3) the FBI's withholding of the names of the hotel guests; (4) the FBI's justification for asserting Exemption 5 to withhold information; and (5) the FBI's alleged failure to provide documents previously disclosed.

## FOIA EXEMPTIONS 6 AND 7(C)

4.      Plaintiff challenges the FBI's assertions of FOIA Exemptions 6 and 7(C) to withhold the following three categories of information: 1) the names of FBI personnel who authored the memorandum dated December 1, 1997; 2) the names of third parties referred to in the document related to Michael Ansley; and 3) the names of the hotel guests who were interviewed by the FBI and/or the local law enforcement agency. Further justification for the FBI's withholding of this information is provided below.

### SPECIAL AGENT NAMES WITHIN FBI MEMORANDUM DATED DECEMBER 1, 1997

5.      As explained in the Seidel Declaration at ¶¶ 50-51, the FBI's analysis when applying Exemptions 6 and 7(C) to withhold the names of FBI Special Agents (SA) and other law enforcement personnel involves balancing the privacy interests of these individuals against any public interest in disclosure. Specifically, in this case, the FBI considered: a) the nature and strength of the privacy interest of these individuals, b) whether a significant public interest under FOIA would be served by disclosure of the identities of these law enforcement agents, and c) whether the claimed public interest outweighs the substantial privacy interest of these third parties. The FBI's analysis is further described below.

*Nature and Strength of the Privacy Interests of FBI Special Agents*

6.      The FBI determined that FBI SAs have a substantial privacy interest in not having their names or identifying information disclosed. The FBI determined that SAs could be subjected to unwarranted harassment, questioning, and publicity if their identities were disclosed. Furthermore, disclosing the identities of SAs could make them targets for criminals and foreign adversaries who seek to intimidate and harass them to gain access to sensitive information. Finally, the disclosure of identities of SAs and the harassment that could result, could not only endanger their safety and well-being, but also could disrupt their work in other ongoing investigations and enforcement proceedings and compromise their effectiveness.[1]

*Special Agents' Privacy is not Diminished by Passage of Time, Trial Testimony, or Discovery*

7.      Plaintiff claims that because the SA's names were disclosed over thirty years ago to Johnson's trial lawyers, that some testified at his trial, and then also were disclosed again to his current legal team in 2018, that the names of the SAs are well known. Plaintiff indicates that for these reasons, further disclosure in the handful of requested reports at issue here allegedly diminishes the privacy interests of these individuals. The FBI analyzed the arguments brought forth by Plaintiff and determined that Plaintiff has not provided sufficient information to show

---

[1] Acknowledging employment of FBI Agents or releasing the names of such individuals in connection with specific investigations exposes them to harassment[1] or worse. *See, e.g.,* https://www.cnn.com/2022/12/16/politics/edward-kelley-january-6-fbi-agents/index.html (describing charges against two individuals involved in the riots at the U.S. Capitol on January 6, 2021, including retaliating against a federal official, interstate threats, and solicitation to commit a crime of violence, based on a list of names of 37 law enforcement members to assassinate, noting which officers were involved in a defendant's arrest, on the January 6-related charges, or present during the search of his home). Clearly, harassment of FBI and other law enforcement personnel is not hypothetical. This tangible risk to such personnel weighs heavily in favor of withholding these individuals' identities and not acknowledging that they are employed by the FBI. Similarly, the risks described herein are also applicable to state and local law enforcement employees mentioned within FBI files.

4

that the identities of these FBI SAs were previously *publicly* disclosed. Instead, Plaintiff has indicated that the information was provided to Plaintiff's counsel during court proceedings but has not specified precisely where this information is available in the public domain. Furthermore, even if these SAs testified publicly during Plaintiff's trial approximately 30 years ago, they did not waive their interest in personal privacy simply by testifying. Considering the passage of time since that testimony, the FBI determined that the privacy interests of these individuals has only increased because any type of publicity that arises from a particular investigation could bring such connections out of obscurity and result in harassment or unofficial questioning, seriously prejudicing these SAs' day-to-day performance where such agents are still employed by the FBI. Reviving this information and placing their names and identifying information into the public domain could subject them to unsolicited questioning and harassment whether they remain employed as SAs with the FBI or have since retired. Accordingly, the FBI determined that these SAs maintain a substantial privacy interest in not having their names or identifying information disclosed publicly, and that interest has not been diminished by any unredacted information provided to Plaintiff's counsel during Plaintiff's criminal trial, by prior testimony in Plaintiff's trial, or by the passage of time.

### *Plaintiff's Claimed Public Interest*

8.    In support of his public interest claim, Plaintiff asserts that disclosure of the identity of the FBI agents who authored the memorandum and disclosure of the identities of local law enforcement personnel and task force members who requested or provided information relevant to the Jefferson County Sheriff's Department's investigation "will shed light on the procedures and governmental actions that lead to capital sentences." *See* Second Supplemental Decl., filed on September 2, 2025 (ECF No. 26-1 at ¶¶ 21-26). First, the FBI withheld the names

of SAs in the memorandum at issue, not names of local law enforcement personnel. Second, for

purpose of Exemptions 6 and 7(C), when determining whether a public interest exists, the FBI's

analysis is guided by FOIA's basic purpose, which is to open agency action to the light of public

scrutiny.

9.      The FBI considers a public interest to exist when information about an individual

would shed light on the FBI's performance of its mission and function. The FBI's role in the

records at issue here was to provide investigative support, including but not limited to following

investigative leads, analyzing crime scene evidence, and locating and interviewing witnesses *in

support of and at the request of* the Jefferson County Sheriff's Department. Plaintiff asserts that

Mr. Johnson's case is a subject of local, national, and international media and social media

attention; however, he does not assert any wrongdoing or misconduct by federal officials while

performing those actions. While the FBI recognizes the gravity of Mr. Johnson's situation, the

FBI does not agree that disclosure of the identity of the FBI SAs who authored the FBI

memorandum at issue would, in and of themselves, shed light on the any *federal* procedures and

*federal* governmental actions in capital sentences. Plaintiff's conviction is not a federal

conviction; the Jefferson County District Attorney's Office in Birmingham, Alabama, brought

the prosecution. Nor does the FBI agree that disclosure of the names and identifying information

of these SAs would provide exculpatory evidence to Mr. Johnson. Plaintiff presents information

from the lead prosecutor in his criminal conviction indicating that after a conviction integrity

review, the prosecutor "came to the conclusion that Johnson's conviction and death sentence

should be overturned." (Second Supplemental Decl. of Ty Alper, ¶ 1.) Plaintiff's claim that

certain information was provided to his counsel during his criminal case fails to recognize the

different statutory obligations between criminal discovery and FOIA. Discovery is typically used

6

to obtain information from an opposing party during litigation, whereas FOIA is a general right of public access to *federal* records. The FBI (i.e., federal government) was not the prosecutor in Mr. Johnson's criminal case. Plaintiff's alleged interest in the records involves claimed wrongdoing by state authorities, not *federal*, and state misconduct is not information that falls within a public interest that FOIA was designed to protect.

### *Balancing Determination*

10.     After considering the above factors, the FBI determined that the substantial privacy interests of the SAs outweighs the public interest asserted by Plaintiff. The FBI determined that disclosure of the identities of these SAs would not significantly increase the public's understanding of the FBI's operations and activities. Disclosure of the names and identifying information would, however, constitute a clearly unwarranted invasion of their personal privacy. As a result, the FBI determined the names and identifying information of the SAs are properly withheld pursuant to FOIA Exemptions 6 and 7(C).

### NAMES OF THIRD PARTIES IN DOCUMENTS RELATED TO MICHAEL ANSLEY

11.     In the Seidel Declaration ¶¶ 55-62, the FBI explained in detail its rationale for protecting the names and the identifying information of third parties within documents related to Michael Ansley. Specifically, the FBI withheld the names and identifying information of four categories of third-party individuals: those who provided information, those who were merely mentioned in the investigative files, third parties of investigative interest, and third parties with criminal records.

### *Third Parties who Provided Information or were Merely Mentioned*

12.     The withheld names and identifying information of these third-party individuals

within the FBI records at issue here were not of investigative interest but willingly provided

information relevant to FBI's investigation or were merely mentioned in the records. Plaintiff did

not provide privacy waivers from these third parties authorizing release of their information, nor

has Plaintiff supplied proof of death with his request. Although Plaintiff indicates that these

individuals are named in "many other documents that have been publicly released" (Plaintiff's

Motion, ¶ 33.), Plaintiff has not provided any information indicating that the FBI has officially

publicly released *these* same documents. Furthermore, if Plaintiff is referring to documents

received through criminal discovery during his criminal trial, as previously discussed at ¶9,

*supra,* this does not constitute an official public acknowledgment of the details within these

specific documents made by the FBI. Regarding the public interest asserted by Plaintiff, as

previously discussed the public interest the FBI weighs against the privacy interests of the

individuals is whether disclosure of the names and identities of these third parties would shed

light on the FBI's performance of its statutory duties. In this case, Plaintiff seeks to obtain

information that he believes might shed light on possible prosecutorial mishandling of the *state*

criminal investigation, not a *federal* one. The FBI determined that there is no FOIA public

interest to outweigh the significant privacy interests of these third parties. Therefore, these

individuals maintain substantial and legitimate privacy interests in not having this information

disclosed.

### *Third Parties of Investigative Interest or Who have a Criminal Record*

13.     The FBI protected the names and identifying information of the third parties who

were of investigative interest to the FBI as well as third parties who have a criminal record.

Being linked with any law enforcement investigation carries a strong negative connotation and a

stigma whether these individuals ever committed any criminal acts. Releasing names and

identifying information of these individuals to the public could subject them to embarrassment as well as under public attention. This identification could negatively influence their professional and social life. Furthermore, Plaintiff did not present a FOIA public interest that could be balanced against the significant privacy interests of these third parties. The public interest presented is specific to shedding light on the prosecution's activities at the *state/local* level and not the FBI's actions at a *federal* level. Therefore, the FBI determined that disclosing personal information concerning these third parties would not significantly increase the public's understanding of the FBI's performance of its mission. The FBI determined that the names and identifying information of these third parties is exempt pursuant to FOIA Exemptions 6 and 7(C), as no public interest exists here sufficient to override these individuals' substantial privacy interests.

### NAMES IN DOCUMENTS RELATED TO HOTEL GUESTS

14.     The FBI protected the names and identifying information of all the third-party individuals who provided information and/or who were merely mentioned in the investigative records. This included the individuals who stayed in the hotel during the murder of the Jefferson County police officer. As explained above, releasing names and identifying information of these individuals to the public could subject them to harassment or embarrassment. This could affect their personal, professional and social life. Plaintiff asserts that disclosing the names of the hotel guests could corroborate Mr. Johnson's claim of innocence. However, as these hotel guests were not of investigative interest to the FBI and Plaintiff does not have any privacy waivers from any of these individuals authorizing release of their information to public, these third-party individuals maintain substantial and legitimate privacy interest in not having their information disclosed. Additionally, the FBI considers disclosing names of the hotel guests would not

significantly increase the public's understanding of the operational and activities of the FBI.

15. Plaintiff asserts in his second supplemental declaration in ¶¶ 35-36 that in 2018 Plaintiff's legal team received in discovery an unredacted roster of names of hotel guests. However, in 2025 Plaintiff states that although the FBI disclosed full and unredacted *substance* of interviews, the FBI redacted the names of the witnesses in its 2025 FOIA release of these documents. Plaintiff claims that the hotel guests have limited privacy interest in the disclosure of their names, and that the public interest in disclosure of the names outweigh their privacy interests. *See* Renewed Motion, p. 11. As a result, Plaintiff requests the unredacted versions of the documents including the unredacted names of all the hotel guests. Plaintiff asserts that revealing the names could shed light on how FBI investigators reached their conclusion, and that this information is critical to corroborate Mr. Johnson's claim of innocence. However, the FBI or federal prosecutors did not make the determinations in Johnson's criminal case that led to his conviction; local law enforcement and prosecutors made those decisions, based on the totality of information and evidence gathered by the Jefferson County officials that led to his conviction. Disclosing the names of the hotel guests who were interviewed by the FBI would not provide Plaintiff with the answers he seeks, as the FBI only assisted in the Jefferson County Sheriff's Department's investigation. The information, if disclosed, would not shed light on the FBI's performance of its mission and function.

16. After analyzing the substantial privacy interests of the hotel guests in not having their names disclosed in connection with a criminal investigation against the public interest asserted by Plaintiff, the FBI determined that these individuals' privacy interests outweigh the claimed public interest in disclosure. Accordingly, the FBI properly withheld the names of these hotel guests that were interviewed pursuant to FOIA Exemptions 6 and 7(C).

**FOIA EXEMPTION 5**

17.     In Plaintiff's renewed motion and second supplemental declaration, he challenged the FBI's assertion of FOIA Exemption 5 and information protected as attorney-client privileged information. The FBI withheld specific non-public details within the communication between an FBI SA and the Department of Justice attorney concerning an individual of investigative interest, pursuant to Exemption 5 and the attorney-client privilege. Plaintiff asserts that because the FBI disclosed a *summary* of the communication between the FBI and DOJ counsel, the FBI's assertion of Exemption 5 over the details of that communication is not valid. However, the FBI determined that the disclosed summary of the communication is not the same as the specific details withheld in the communication. These details consist of specific information that resulted in the legal advice provided.

18.     Although the released information shows that the FBI consulted with DOJ counsel and requests for guidance, it does not reveal the specific details of that communication or disclose the specific guidance that DOJ counsel provided to the FBI. The FBI protected this communication between an FBI SA and a senior legal advisor from another government agency who shared an information package that was related to this criminal investigative matter. This communication contained legal guidance that was not shared with or circulated to individuals outside the attorney-client relationship and was made for the purpose of securing legal assistance or advice in relation to government legal positions. Release of the withheld details would call into question the FBI's commitment to protect information shared between agency clients and attorneys and could discourage agency attorneys and clients from fully sharing information. Additionally, release of details would provide advantage to individuals seeking legal action against the government and/or those targeted for prosecution by the government in similar cases.

It would provide information traditionally privileged in a legal context and disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies. Accordingly, the FBI properly withheld the specific details of the privileged communications pursuant to Exemption 5.

### DOCUMENTS ALREADY DISCLOSED TO PLAINTIFF

19.     Plaintiff alleged that the FBI failed to fully comply with the court order, which was "to disclose all documents that match those that Alper has already identified as previously disclosed." (ECF No. 22 at 6). Also, Plaintiff alleged that "the Bureau's failure to provide them raises concerns about the thoroughness of its review of its record in this matter." Plaintiff provided a list of documents he received previously from the Jefferson County Sheriff's Office and the Jefferson County District Attorney's Office. (ECF No. 20-1.) This list included five documents. The FBI reviewed every document in the production to locate any documents that matched Plaintiff's documents, and then released the matching documents to Plaintiff in compliance with the Court's order. The FBI found that only one of the documents were in FBI's investigative file. Though these documents were related to the FBI investigation and contained the same FBI case file number, these documents were not found to be a part of the investigative file that was processed and released to Plaintiff.

### CONCLUSION

20.     In response to the Court's order, the FBI released all segregable non-exempt information from the documents responsive to Plaintiff's FOIA request that are subject to FOIA. The FBI's determination was consistent with the access provisions of the FOIA to achieve maximum disclosure. Regarding the remaining challenges presented by Plaintiff in his Partial

Motion for Reconsideration, the FBI carefully examined the relevant documents and determined that the information withheld from Plaintiff in this case, if disclosed, would reveal privileged information; cause a clearly unwarranted invasion of personal privacy, or/and could reasonably be expected to constitute an unwarranted invasion of personal privacy. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Shannon Hammer

Digitally signed by Shannon Hammer
Date: 2025.10.01 13:28:35 -04'00'

SHANNON R. HAMMER
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia