IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY ALPER,

*Plaintiff,*

v.

FEDERAL BUREAU OF INVESTIGATION,

*Defendant.*

Civil Action No. 24-cv-1837 (DLF)

**DECLARATION OF CHRISTINA L. DRIVER**

I, Christina L. Driver, declare as follows:

1. I am currently an Assistant Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), located in Winchester, Virginia, and in the absence of the RIDS Section Chief, I serve as Acting Section Chief for RIDS. I have held this position since June 2026. I joined the FBI in February 1999. Prior to my current position, I served as International Operations Division's Chief Protocol Officer from April 2022 to February 2023, Unit Chief of the International Operations Division's International Protocol Unit from September 2011 to April 2022, Program Manager for the Weapons of Mass Destruction Directorate from August 2008 to September 2011, Protocol Affairs Specialist in the Office of International Operations from October 2004 to August 2008, Research Analyst in IMD from August 2002 to September 2004, and Paralegal Specialist in IMD from February 1999 to July 2002.

2. In my official capacity as Acting Section Chief of RIDS, I supervise eight Federal Bureau of Investigation Headquarters units and two field operational service center units. RIDS'

collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4. The FBI submits this declaration in response to the Court's Memorandum Opinion ("Opinion") filed on May 14, 2026 (Dkt. No. 31). This declaration supplements and incorporates by reference the information previously provided in the declaration of Michael G. Seidel ("Seidel Declaration") filed on December 16, 2024 (Dkt. No. 12-3) and declaration of Shannon Hammer ("Hammer Declaration") filed on October 21, 2025 (Dkt. No. 28-1). This declaration provides additional justification for withholding information in full pursuant to FOIA Exemption 5. The background of this matter is set forth in the previously filed Seidel Declaration and will not be fully recounted here. Only information directly relevant to the issue raised in Plaintiff's Renewed Motion for Summary Judgment and for Partial Reconsideration ("Renewed Motion") filed on September 2, 2025 (Dkt. No. 26.) and the Court's Opinion is discussed herein.

This declaration addresses the FBI's justification for asserting Exemption 5 to withhold information.

**FOIA EXEMPTION 5**

5. In Plaintiff's Renewed Motion and second supplemental declaration, he challenged the FBI's assertion of FOIA Exemption 5 to withhold information protected as attorney-client privileged. The Court ordered the FBI to "review the documents withheld under Exemption 5 and attest in greater detail about whether any non-privileged information therein, including nonlegal strategic advice, is segregable and disclosable to Alper."

6. The Hammer Declaration at ¶ 17 explained that the FBI withheld *specific non-public details* in communications between an FBI SA and DOJ counsel pursuant to the attorney-client privilege. Acting Section Chief ("A/SC") Hammer also explained that the disclosed summary of the communication is different from the specific details in the communications. The withheld information in the communications differs from the summary because it consists of detailed information that resulted in providing legal advice.

7. While the FBI's Birmingham, Alabama, Field Office was assisting the Jefferson County Police Department to locate and interview one of the third parties of investigative interest who was in a foreign country, the FBI Birmingham Field Office requested legal advice from DOJ specifically to prepare letters rogatory for this case.[1]

8. In fact, the released information on Bates pages 246 and 378 shows that the FBI consulted with DOJ counsel and requested legal guidance. In response to the FBI's inquiry, DOJ

---

[1] Letters rogatory are the customary method to obtain assistance from a foreign country in the absence of a treaty or executive agreement. A letter rogatory is a request from a judge in the United States to the judiciary of a foreign country requesting the performance of an act which, if done without the sanction of the foreign court, would violate that country's sovereignty.

Counsel provided guidance and instruction for the FBI's coordination with the Jefferson County District Attorney's office for preparation and submission of a treaty request to DOJ instead of letters rogatory. DOJ Counsel provided the FBI with official written legal guidance and instruction, including several attachments as useful examples relevant to the inquiry. DOJ Counsel provided this legal guidance to an FBI agent in Birmingham concerning preparation of the treaty request in the event the Jefferson County District Attorney's office would be required to prepare a treaty request and furnish it to the Spanish authorities. The FBI determined that this detailed legal guidance and the related accompanying materials provided to the FBI by DOJ Counsel to share with Jefferson County District Attorney's office in response to the FBI's request for legal guidance qualifies as attorney-client privilege because this communication contained legal guidance that was not shared with or circulated to individuals outside the attorney-client relationship and was made for the purpose of securing legal assistance. As A/SC Hammer explains in her declaration at ¶ 18, release of this detailed legal guidance and advice would call into question the FBI's commitment to protect information shared between agency clients and attorneys and would discourage agency attorneys and clients from fully sharing information.

9. Specifically, the FBI withheld five documents under Exemption 5 and the attorney-client privilege on Bates pages 278-344. These documents include two nearly duplicate official letters with three attachments from DOJ counsel to an FBI agent in response to that agent's request for legal advice and guidance. DOJ Counsel provided the agent with specific detailed step by step guidance, advising the FBI agent on what was required to make the request legally compliant pursuant to the applicable Mutual Legal Assistance Treaty requirements. DOJ Counsel provided an information package specific to what advice was provided that contained

selected examples of information required to prepare an official treaty request to Spain in response to different types of criminal activities. Releasing it would disclose information traditionally privileged in a legal context and disrupt the adversarial process of litigation related to individuals targeted for prosecution by the government by providing access to information related to the government's potential legal strategies. Accordingly, the FBI properly withheld these privileged communications pursuant to Exemption 5 in conjunction with the attorney client privilege.

## CONCLUSION

10. In response to the Court's Order filed on May 14, 2026, Dkt. No. 31, the FBI carefully re-examined the withheld in full documents at issue and determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information. The FBI determined that the withheld information, if disclosed, would reveal privileged information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of June 2026.

Christina L. Driver
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia