**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TY ALPER**,                             ) <br>                                 ) <br>             Plaintiff,           ) <br>                                 ) <br> **v.**                                ) <br>                                 ) <br> **DEPARTMENT OF JUSTICE,**   ) <br>                                 ) <br>             Defendant.       ) <br>                                 ) | Civil Action No. 24-1837 (DLF) |

## <u>PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS</u>

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), and Federal Rule of Civil Procedure 54(d)(2), plaintiff Ty Alper respectfully moves the Court for an award of reasonable attorneys' fees and litigation costs against defendant U.S. Department of Justice. This action was terminated by the Court's Order of July 2, 2026 (ECF No. 38). Upon plaintiff's consent motion (ECF No. 40), the Court, by Minute Order of July 14, 2026, extended the time for filing this motion to and including August 14, 2026, and this motion is timely filed. Fed. R. Civ. P. 54(d)(2)(B)(i).

As set forth below and in the accompanying declaration of counsel, plaintiff substantially prevailed in this litigation and is both eligible for and entitled to an award of fees and costs. As documented in the itemized statement of counsel's time attached to his declaration, counsel devoted 123.2 compensable hours to this litigation through May 19, 2026 — including 77.7 hours on the four principal summary judgment filings — which, at the historical rates of the Fitzpatrick Matrix published by the United States Attorney's Office for the District of Columbia for the years in which the work was performed, yields a lodestar of $114,126.10. In addition, plaintiff seeks compensation for 16.5 hours devoted to pre-motion efforts to resolve the fee issue and to the preparation of this motion, at the 2026 Fitzpatrick Matrix rate of $998 per hour

($16,467).  Plaintiff accordingly seeks a total award of $130,593.10 in attorneys' fees and $405 in costs.

## INTRODUCTION

Plaintiff Ty Alper brought this FOIA action to obtain Federal Bureau of Investigation records bearing on the innocence claim of Toforest Johnson, who has spent more than two decades on Alabama's death row.  The FBI withheld all 513 potentially responsive pages in full under FOIA Exemption 7(A).  The Court held that the FBI had failed to justify its withholdings — ordering disclosure of records matching information already in the defense's possession and reevaluation of the rest, ECF Nos. 21, 22 — and the FBI thereafter abandoned Exemption 7(A) entirely, producing 417 previously withheld documents in redacted form.  In a second merits ruling, the Court — applying the D.C. Circuit's decision in *Roth v. Department of Justice*, 642 F.3d 1161 (D.C. Cir. 2011) — ordered disclosure of the names of the agents who authored a December 1997 FBI memorandum concluding that prosecution of Mr. Johnson was highly unlikely, the redacted names in records concerning witness Michael Ansley, and the names of the hotel guests who gave witness statements to the FBI.  *See Alper v. Dep't of Justice*, No. 24-1837, 2026 WL 1353821 (D.D.C. May 14, 2026); ECF Nos. 31, 32.

Plaintiff substantially prevailed and now seeks an award of reasonable attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E).  Counsel's documented compensable time through May 19, 2026, is 123.2 hours — of which 77.7 hours were devoted to the four principal summary judgment filings — yielding a lodestar of $114,126.10 at the historical rates of the Fitzpatrick Matrix for the years in which the work was performed.  Time devoted to the unsuccessful request for *in camera* inspection is excluded; time devoted exclusively to unsuccessful, severable issues has been removed or apportioned; purely clerical tasks are excluded; and every entry is rounded

2

down to the nearest six-minute increment.  Plaintiff also seeks compensation for 16.5 hours devoted to the preparation of this motion, at the 2026 Fitzpatrick Matrix rate of $998 per hour.

## FACTUAL BACKGROUND

Plaintiff, counsel to Toforest Johnson in post-conviction proceedings, submitted the underlying FOIA request to the FBI seeking records concerning the 1995 murder of Jefferson County Deputy Sheriff William Hardy and the ensuing FBI investigation.  Plaintiff filed this action on June 25, 2024 (ECF No. 1).  The FBI located approximately 513 potentially responsive pages and, upon completing its review, withheld all 513 potentially responsive pages in full under Exemption 7(A), supported by a declaration asserting generalized harms to potential enforcement proceedings arising from the decades-old prosecution.  *See* Seidel Decl., ECF No. 12-3.

The parties cross-moved for summary judgment.  By Memorandum Opinion and Order of May 27, 2025 (ECF Nos. 21, 22), the Court held that the FBI had not adequately justified its Exemption 7(A) withholdings, ordered disclosure of records matching information already in the defense's possession, and required reevaluation of the remaining withholdings.  The FBI then withdrew its Exemption 7(A) claims in their entirety and produced 417 previously withheld documents in redacted form.  Following plaintiff's renewed motion (ECF No. 26), the Court's May 14, 2026 Memorandum Opinion and Order, 2026 WL 1353821 (ECF Nos. 31, 32), ordered disclosure of three of the four categories of names withheld under Exemptions 6 and 7(C): the authors of the December 1997 memorandum, the redacted names in the Ansley documents, and the hotel guest names matched to their FBI interview statements.  The FBI reproduced 106 pages with additional information unredacted, pursuant to the Court's disclosure orders (ECF No. 31; Minute Order of May 23, 2026, extending the disclosure deadline to May 29, 2026); ECF No.

3

36.  The Court resolved the remaining Exemption 5 segregability issue in the government's favor

and closed the case on July 2, 2026 (ECF Nos. 38, 39).

On plaintiff's consent motion, the Court extended the deadline for any fee motion to

August 14, 2026 (ECF No. 40).  This motion followed.

## ARGUMENT

### I.    As a Substantially Prevailing Party, Plaintiff is Eligible for an Award of Fees and Costs

A FOIA plaintiff is eligible for fees if he "substantially prevailed," including by obtaining

relief through "a judicial order." 5 U.S.C. § 552(a)(4)(E)(i), (ii)(I); *Brayton v. Office of the U.S.

Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir. 2011); *see also Grand Canyon Trust v. Bernhardt*,

947 F.3d 94, 96 (D.C. Cir. 2020). A plaintiff need only "succeed on any significant issue in

litigation which achieves some of the benefit" sought in bringing suit. *Edmonds v. FBI*, 417 F.3d

1319, 1326–27 (D.C. Cir. 2005) (citation omitted).

Plaintiff readily satisfies the eligibility requirement.  Two merits rulings changed the

legal relationship between the parties and compelled disclosure.  *See Campaign for Responsible

Transplantation v. FDA*, 511 F.3d 187, 194–96 (D.C. Cir. 2007).  The May 27, 2025 ruling

rejected the FBI's invocation of Exemption 7(A) to withhold the records in full, directed the

government to disclose all documents matching those plaintiff had identified as previously

disclosed, and required the FBI to reevaluate every remaining record and to justify any continued

withholding by supplemental declaration. ECF No. 22 at 6.[1]  Rather than undertake that showing,

the FBI withdrew Exemption 7(A) in its entirety and produced 417 previously withheld

documents in redacted form.  The May 14, 2026 Order compelled disclosure of three categories

---

[1] The Court also determined at the outset that this action warranted expedited consideration to prevent "[t]he loss of substantial due process of rights" — a proposition with which the government agreed. ECF No. 22 at 13.

of withheld names, resulting in the reproduction of 106 pages with additional information unredacted.  On this record, plaintiff plainly "obtained relief through . . . a judicial order," 5 U.S.C. § 552(a)(4)(E)(ii)(I), and is eligible for an award of attorneys' fees and costs reasonably incurred in achieving that result.

## II.    Plaintiff is Entitled to an Award of Fees and Costs.

A substantially prevailing plaintiff's entitlement to fees turns on "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013); *accord Kwoka v. IRS*, 989 F.3d 1058, 1063–64 (D.C. Cir. 2021).  No factor is dispositive, *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), and each favors plaintiff here.

### A.  Disclosure of the Requested Records Serves a Significant Public Interest.

The public-benefit factor asks whether the request had "a modest probability of generating useful new information about a matter of public concern."  *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016).  This factor requires little argument, because the Court has already made the findings that resolve it.  Applying the D.C. Circuit's recognition of the "considerable public interest in the potential innocence of individuals sentenced to death," *Roth*, 642 F.3d at 1176, the Court found that plaintiff's declarations "further substantiate that the public has considerable interest specifically in Johnson's innocence claim," ECF No. 32 at 6, and identified the bases for that finding: an "unprecedented number" of amicus briefs filed in Mr. Johnson's post-conviction case; the lead prosecutor at his original trial's stated belief that he should receive a new trial; national and international media attention; and a critically acclaimed podcast, re-released in February 2026, heard by hundreds of thousands of people.  *Id.* at 7.  The Court then

weighed the asserted privacy interests against the public's "compelling interest" in information that "could help exonerate a potentially innocent death-row inmate." *Id.* (quoting *Roth*, 642 F.3d at 1178, 1181).  The records this litigation produced go to the center of that interest.  A 1997 FBI memorandum, disclosed to plaintiff with its authors' names redacted, concluded that a retrial of Mr. Johnson was "highly unlikely," and that it was equally "highly unlikely" that Alabama would uncover new evidence sufficient to "prove beyond a reasonable doubt the guilt" of Mr. Johnson.  ECF No. 32 at 7.  The Ansley records concern "[e]vidence pointing to a different person who committed the murder."  *Id.* at 11.  And the record establishes that the FBI's interviews of hotel guests, conducted through twenty-five field offices, revealed that none of the guests implicated Mr. Johnson in any way.  *Id.* at 12.  Nor was the relief academic: the Court found that with the names it ordered disclosed, plaintiff "can more diligently and more credibly pursue Johnson's innocence claim."  *Id.* at 8.  Records bearing this directly on the integrity of a capital conviction contribute to public understanding in the most concrete sense the fee provision contemplates.  *See Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

**B. Plaintiff Derived No Commercial Benefit from This Lawsuit and Shared the Public Interest in the Requested Records.**

The second and third factors are "closely related and often considered together," *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992), and together distinguish requesters who seek records "for public informational purposes" from those who seek them "for private advantage."  *Davy*, 550 F.3d at 1160.  Plaintiff is *pro bono* post-conviction counsel to a death-sentenced man.  He derived no commercial benefit whatsoever from the request or this litigation, and his interest — preventing the execution of a potentially innocent person and subjecting the underlying investigation to public scrutiny — is precisely the kind of interest the fee provision exists to encourage.  Both factors weigh strongly in plaintiff's favor.  *Cf. Kwoka*, 989 F.3d at

6

1064–65 (second and third factors favored a law professor pursuing a scholarly, non-commercial interest in the records).

### C. The Agency's Withholding of the Requested Records Lacked a Reasonable Basis in Law.

Under the fourth factor, "the question is not whether [plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis" for its refusal to disclose. *Davy*, 550 F.3d at 1163. The Court's two merits opinions supply the answer. The FBI withheld approximately 513 potentially responsive pages in full under Exemption 7(A). ECF No. 32 at 1. On that record, the Court held, it "cannot conclude that the FBI has met its burden to explain how disclosure will harm the government's case." ECF No. 22 at 5. Because the agency never explained "how its investigation will be impaired by the release of information that the targets of the investigation already possess," it "has not properly invoked Exemption 7(A)." *Id*. The harms the FBI did assert fared no better: "[g]eneralized concerns about the potential for witness tampering, evidence destruction, and the thwarting of the government's trial strategy . . . are not as compelling when the witnesses have already been disclosed, the evidence is decades old, and the government has revealed its evidence and strategy in an earlier trial." *Id*. The Court "reject[ed] the FBI's invocation of Exemption 7(A) to withhold law enforcement records in full," *id*. at 6, and afforded the agency the opportunity to justify its withholdings document by document. The Bureau withdrew its remaining Exemption 7(A) withholdings instead and disclosed 417 redacted documents. It "seemingly abandoned" its Exemption 7(D) withholdings as well. ECF No. 32 at 2. The privacy withholdings followed the same pattern. Three times the Court found that the agency simply did not engage the question on which the issue turned. As to the first category of names, "[t]he FBI does not meaningfully respond to this public interest," ECF No. 32 at 6 — a

finding the Court made by reference to the government's opposition and supporting declaration as a whole.  As to the Ansley documents, "[a]gain, the government does not meaningfully respond to Alper's arguments about the public interest in Johnson's innocence claim."  *Id*. at 10.  And as to the hotel guests, "[a]gain, the FBI does not meaningfully respond to Alper's asserted public interest in corroborating Johnson's innocence claim."  *Id*. at 12.  An agency that declines to answer the dispositive argument has not carried its burden of showing a colorable basis for withholding.  Two full rounds of summary judgment were required to obtain what the Bureau never justified.

### III.  The Requested Fee Award is Reasonable

#### A.  The Court Should Apply the Fitzpatrick Matrix to Determine the Prevailing Market Rates for Legal Services.

Reasonable fees are calculated by the lodestar method: hours reasonably expended multiplied by a reasonable hourly rate.  *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).  Plaintiff applies the rates of the Fitzpatrick Matrix — the schedule of hourly rates for complex federal litigation in this District developed and published by the U.S. Attorney's Office and routinely applied in FOIA cases, *see, e.g.*, *Tobias v. U.S. Dep't of the Interior*, No. 22-cv-696, 2026 WL 879191, at *6 (D.D.C. Mar. 31, 2026) — at the historical rates for the years in which the work was performed: $864 (2024), $933 (2025), and $998 (2026).  Sobel Decl. ¶ 8 & Ex. B.  Historical rates are required when fees are awarded against the United States.  *Library of Congress v. Shaw*, 478 U.S. 310, 321–23 (1986); *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (*en banc*).  Undersigned counsel has practiced law since 1980 and has litigated FOIA matters in this District for more than 35 years, placing him in the Matrix's highest experience tier; in

awarding fees to a party counsel represented, the court in *CREW v. DOJ*, 142 F. Supp. 3d 1, 2, 5 (D.D.C. 2015), noted counsel's decades of FOIA experience and his editorship of a leading treatise on the federal open government laws, and found it "uncontested" that counsel in that matter were "experienced, national experts in FOIA litigation."  This litigation — four merits briefs over two complete rounds of summary judgment, on the extensive factual record of a decades-old capital prosecution — is complex federal litigation to which the full Matrix rates apply.  FOIA litigation has long been among the categories of cases compensated at Matrix rates in this District.  *See Reed v. District of Columbia*, 843 F.3d 517, 527 (D.C. Cir. 2016) (Tatel, J., concurring) (identifying the Freedom of Information Act among the areas of complex litigation in which courts of this Circuit have awarded Matrix rates) (citing *ACLU v. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 277 (D.D.C. 2011)).

### B. The Legal Work for Which Plaintiff Seeks Compensation Is Well-Documented and the Time Is Reasonable.

While a fee applicant bears the burden of establishing the reasonableness of its request, that burden is met when the supporting documentation is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (citations and internal quotation marks omitted).  Here, plaintiff submits an itemized statement detailing the discrete tasks counsel performed at each stage of the litigation and the time devoted to each, based upon counsel's records.  Sobel Decl. ¶¶ 5–6 & Ex. A.  Such detail distinguishes plaintiff's documentation from the kind of "generic entries" the D.C. Circuit has admonished fee applicants to avoid. *Role Models*, 353 F.3d at 971 (finding inadequate "numerous entries in which attorneys billed simply for 'research' and 'writing'").

9

Counsel's itemized time statement, attached to the Sobel Declaration as Exhibit A, documents 123.2 compensable hours over the life of this litigation: 18.0 hours performed in 2024 ($15,552.00), 98.7 hours performed in 2025 ($92,087.10), and 6.5 hours performed in 2026 ($6,487.00), for a total lodestar of $114,126.10.  Of that time, 77.7 hours were devoted to the four principal summary judgment filings — 28.0 hours to plaintiff's opposition and cross-motion (ECF Nos. 14, 15); 12.5 hours to plaintiff's reply (ECF No. 20); 25.2 hours to plaintiff's renewed motion (ECF No. 26), after the apportionment described below; and 12.0 hours to the reply in support of the renewed motion (ECF No. 29).  The remaining time comprises the complaint, the parties' status reports and court-ordered conferrals, review of the government's productions, the motion for relief from the standing order (ECF No. 27), review of the Court's rulings and related client counseling, and plaintiff's opposition to the government's motion to extend the disclosure deadline. Sobel Decl. ¶ 7. Review of the agency's disclosures for sufficiency during the course of the litigation is compensable. *See EPIC v. FBI*, 80 F. Supp. 3d 149, 158–59 (D.D.C. 2015) (time spent reviewing released records to evaluate the sufficiency of a release or the propriety of a withholding is properly included in a fee award).

Plaintiff did not prevail on every issue.  The Court ultimately sustained the government's Exemption 5 withholdings, though not before ordering the FBI to review those documents again and to attest in greater detail to the segregability of any nonlegal strategic advice.  ECF No. 32 at 16; ECF Nos. 38, 39.  The Court declined to order disclosure of one of the four categories of withheld names, and found no action necessary as to three documents plaintiff already possessed.[2]  It also denied plaintiff's request for in camera inspection.  The lodestar accounts for

---

[2] As to the local law enforcement names, the Court agreed that "[a] similar analysis would apply" and that disclosure "could advance Johnson's innocence claim," but concluded that the 1997 memorandum did not itself cite local reports and that plaintiff had not identified specific documents for disclosure.  ECF No. 32 at 9.

these outcomes.  All time devoted to the unsuccessful in camera request (ECF No. 37) is excluded.  Sobel Decl. ¶ 7.

Counsel also reviewed the remaining entries and, wherever his records separately identified time devoted exclusively to an unsuccessful, severable issue, removed or apportioned that time.  Those apportionments appear in the entries for the renewed motion, where counsel's records separately identified Exemption 5 analysis, reconsideration-specific procedural analysis, and the corresponding portions of bundled drafting entries.  Sobel Decl. ¶ 7 & Ex. A.  No comparable apportionment was required for the first round of briefing, where the unsuccessful contentions occupied almost none of the filings: plaintiff's Exemption 5 argument in the combined opposition and cross-motion consisted of a single footnote, and the reply advanced no Exemption 5 argument at all.[3]  Elsewhere the arguments on which plaintiff did not prevail were advanced in the same briefs, on the same factual record, and in the same drafting sessions as the arguments on which he prevailed.  Where tasks could not reasonably be separated because they involved preparation of the same filing on a common factual record, no further reduction was made, consistent with the instruction that where successful and unsuccessful claims share a common core of facts, the court "should focus on the significance of the overall relief obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  Those filings achieved plaintiff's central objective: the production of 417 previously withheld documents and the reprocessing of records under the Court's disclosure orders, with substantial previously withheld information disclosed, including the identities ordered disclosed under *Roth*.

---

[3] The Court so observed.  ECF No. 22 at 12 ("Alper does not meaningfully challenge the FBI's withholdings under this privilege. His only opposition appears in a footnote . . . ."); *see* ECF No. 15-1 at 18 n.12.

The request reflects billing judgment in other respects as well.  Plaintiff, himself an experienced attorney and law professor, prepared his own declarations and personally reviewed the 417 documents the FBI produced after abandoning Exemption 7(A).  No time for plaintiff's own work is included in this request, which seeks compensation for the time of undersigned counsel alone.[4]  Counsel also narrowed the issues rather than contesting every element, conceding at the threshold that the withheld records were compiled for law enforcement purposes.  ECF No. 22 at 3.  Purely clerical tasks were excluded, while counsel retained substantive attorney time devoted to negotiating case schedules, compliance deadlines, and court-ordered case-management matters.  Every entry is rounded down to the nearest six-minute increment.  Entries described generically as "advise client" reflect substantive attorney-client communications described so as to preserve privilege.  Sobel Decl. ¶ 7.  No time after May 19, 2026, is included in the lodestar.  Counsel's timekeeping practice — a running tally of time devoted to each discrete task, recorded in six-minute increments — is one this Court has expressly endorsed: in *CREW*, 142 F. Supp. 3d at 16, the court applied an 18% reduction to co-counsel's inadequately documented hours while exempting the hours of undersigned counsel, who "maintained a running, contemporaneous tally of time devoted to each discrete task performed."

The amount sought is well within the range of fee awards at Fitzpatrick Matrix rates in this District.  *See, e.g., Brackett v. Mayorkas*, No. 17-988, 2023 WL 5094872, at *9 (D.D.C. Aug. 9, 2023) (awarding $526,101.70 at Matrix rates).

---

[4] Those declarations supplied the factual showing the Court found dispositive. ECF Nos. 16, 20-1, 26-1, 29-1, 30-1; *see* ECF No. 32 at 6–7.

**C.  Time Devoted to This Fee Application Is Compensable.**

The lodestar above includes no time devoted to this fee application. Hours reasonably devoted to the fee request itself are compensable. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985); *EPIC v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015). The question is whether the fees sought were "necessary to effectively litigate a contested motion for attorneys' fees." *Tobias*, 2026 WL 879191, at *9.  Counsel devoted 16.5 hours to pre-motion efforts to resolve the fee issue without the Court's involvement — including the fee demand, related correspondence with government counsel, and the consent extension motion (ECF No. 40) — and to the preparation of this motion, compensable at the 2026 Matrix rate of $998 per hour, in the amount of $16,467.  Sobel Decl. ¶ 9.  Plaintiff intends to supplement his request for attorneys' fees to account for additional time spent in the preparation of his reply in support of this motion.  *Id*.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and order defendant to pay plaintiff attorneys' fees in the amount of $130,593.10 and costs in the amount of $405 pursuant to 5 U.S.C. § 552(a)(4)(E).

Respectfully submitted,

 */s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

*Counsel for Plaintiff*

13