## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TY ALPER**, )<br><br>Plaintiff, )<br><br>**v.** )<br><br>**DEPARTMENT OF JUSTICE,** )<br><br>Defendant. )<br>—————————————————————— ) | Civil Action No. 24-1837 (DLF) |

## <u>DECLARATION OF DAVID L. SOBEL</u>

David L. Sobel hereby deposes and states:

1.  I am counsel for plaintiff Ty Alper in the above-captioned action and submit this declaration in support of plaintiff's motion for an award of attorneys' fees and costs.

2.  I have been an active member of the bar and practicing law since May 1980.  For more than 35 years, I have represented a wide variety of non-profit, public interest organizations and individual requesters in litigation under the Freedom of Information Act in this and other federal courts.  I have acted as counsel in dozens of such cases.

3.  I was the co-editor of the 2002 and 2004 editions of *Litigation Under the Federal Open Government Laws*, a leading treatise on FOIA litigation.  I was the recipient of the American Library Association's James Madison Award in 2004 in recognition of my contribution to FOIA litigation and open government efforts, and was inducted into the First Amendment Center's National FOIA Hall of Fame in 2006.  In awarding fees in *CREW v. DOJ*, 142 F. Supp. 3d 1, 2 (D.D.C. 2015), the court took note of my experience litigating FOIA matters, my editorship of a leading treatise on the federal open government laws, and my recognition as a leading national FOIA practitioner.

4. I represented plaintiff in this matter on a *pro bono* basis. As such, I did not prepare bills or invoices reflecting the hours I devoted to the case on a monthly (or other periodic) basis, and I did not charge plaintiff a customary hourly rate for the legal work I performed on his behalf.

5. Although I did not submit periodic bills or invoices, throughout the litigation I maintained a contemporaneous electronic tally identifying each discrete task and the time devoted to it. I updated the tally as work was performed, recorded time in six-minute increments, and endeavored to exclude unproductive time. The court in *CREW v. DOJ*, 142 F. Supp. 3d at 16, described this practice and declined to apply to my hours the reduction it imposed on the hours of co-counsel in that case.

6. In preparation of this declaration, I reviewed my running tally of time devoted to discrete litigation activities, my case file of pleadings and research materials, and my email records for the litigation. The hours set forth in Exhibit A are taken from my contemporaneous running tally; the descriptions and dates were cross-checked against my email, pleading, and docket records. As a result of that review, I am confident that the time reflected in the itemized statement attached as Exhibit A was reasonably expended in order to achieve success in this matter, and that there are no excessive, redundant or unnecessary hours included in this request. The itemized statement documents 123.2 compensable hours devoted to this litigation through May 19, 2026, summarized by year as follows.

| Year | Hours | Fitzpatrick Matrix Rate | Amount |
|---|---|---|---|
| 2024 | 18.0 | $864 | $15,552.00 |
| 2025 | 98.7 | $933 | $92,087.10 |
| 2026 | 6.5 | $998 | $6,487.00 |
| TOTAL | 123.2 | | $114,126.10 |

7.  Of the hours set forth above, 77.7 were devoted to the four principal summary judgment filings: 28.0 hours to the opposition and cross-motion (ECF Nos. 14, 15); 12.5 hours to the reply (ECF No. 20); 25.2 hours to the renewed motion (ECF No. 26), after the apportionment described below; and 12.0 hours to the reply in support of the renewed motion (ECF No. 29). The remaining 45.5 hours were devoted to the complaint, the parties' status reports and court-ordered conferrals, review of the government's productions, the motion for relief from the standing order (ECF No. 27), review of the Court's rulings and related client counseling, and plaintiff's opposition to the government's motion to extend the disclosure deadline (ECF No. 34).  The hours stated above reflect billing judgment throughout.  Time devoted to preparing and filing plaintiff's response to the agency's compliance declaration, which sought *in camera* inspection that the Court denied (ECF Nos. 37–39), is excluded.  I reviewed the remaining entries and, wherever my records separately identified time devoted exclusively to an unsuccessful, severable issue, I removed or apportioned that time.  Those apportionments are reflected in the August 2025 entries for the renewed motion, where my records separately identified Exemption 5 analysis, reconsideration-specific procedural analysis, and the three-document claim on which plaintiff did not prevail.  No comparable apportionment was required for the first round of briefing.  Plaintiff's Exemption 5 argument in the combined opposition and cross-motion consisted of a single footnote, ECF No. 15-1 at 18 n.12, and the reply advanced no Exemption 5 argument at all.  Elsewhere the arguments on which plaintiff did not prevail were advanced in the same briefs, on the same factual record, and in the same drafting sessions as the arguments on which he prevailed, and I therefore made no further reduction to those entries. Plaintiff, who is himself an attorney, prepared his own declarations in this matter and personally reviewed the records the FBI produced after it withdrew its Exemption 7(A) claims.  No time for

plaintiff's own work is included in Exhibit A, which reflects my time alone.  Purely clerical tasks have been excluded; I retained substantive attorney time devoted to negotiating case schedules, compliance deadlines, and court-ordered case-management matters.  Where a bundled entry combined successful work with identifiable unsuccessful-issue work — including the August 29, 2025 entry — I apportioned and excluded the portion attributable to the unsuccessful, severable issues.  Entries described in Exhibit A as "advise client" reflect substantive attorney-client communications regarding the conduct of this litigation, described generically to preserve the attorney-client privilege.  Every entry is rounded down to the nearest six-minute increment, and no time is included in Exhibit A for work performed after May 19, 2026.

8.  The rates applied are the historical rates of the Fitzpatrick Matrix published by the Civil Division of the United States Attorney's Office for the District of Columbia, for an attorney in the highest experience tier, for the years in which the work was performed: $864 per hour (2024), $933 per hour (2025), and $998 per hour (2026).  As reflected in the table above, these rates yield a lodestar of $114,126.10.  A copy of the Matrix is attached as Exhibit B.

9.  The itemized statement includes no time devoted to this fee application.  I devoted 16.5 hours to pre-motion efforts to resolve the fee issue without the Court's involvement — including the fee demand, related correspondence with government counsel, and the consent extension motion (ECF No. 40) — and to the preparation of this motion, compensable at the applicable 2026 Fitzpatrick Matrix rate of $998 per hour ($16,467).  Time devoted to the preparation of a reply in support of this motion will be presented in a supplemental declaration submitted with the reply.

10.  Plaintiff incurred the following expenses in this action, for which compensation is requested: court filing fee ($405).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 12, 2026

*/s/ David L. Sobel*
DAVID L. SOBEL

# EXHIBIT A

*Alper v. U.S. Department of Justice, No. 1:24-cv-01837 (DLF) (D.D.C.)*

**Itemized Statement of Attorney Time — David L. Sobel**

| Date | Description of Work | Hours | Rate |
|---|---|---|---|
| 6/13/2024 | Advise client re potential FOIA litigation | 0.7 | $864 |
| 6/14/2024 | Advise client; confirm representation terms | 0.7 | $864 |
| 6/18/2024 | Draft FOIA complaint; address case-caption question | 3.0 | $864 |
| 6/19/2024 | Revise complaint; advise client re filing | 0.7 | $864 |
| 6/20/2024 | Review FBI response to expedition request; advise client | 0.5 | $864 |
| 6/25/2024 | Advise client; finalize complaint for filing (No. 24-cv-1837); clerical filing tasks excluded | 1.2 | $864 |
| 6/28/2024 | Correspondence re FOIPA request status | 0.2 | $864 |
| 7/22/2024 | Correspondence re FOIPA request | 0.2 | $864 |
| 8/7/2024 | Review answer and notice of appearance (ECF 6-7) | 0.2 | $864 |
| 8/8/2024 | Correspondence with AUSA Berhane re court-ordered meet-and-confer and case schedule | 0.5 | $864 |
| 8/12/2024 | Correspondence with AUSA re proposed schedule for joint status report | 0.5 | $864 |
| 8/23/2024 | Correspondence with AUSA re joint status report | 0.2 | $864 |
| 8/27/2024 | Correspondence with AUSA; JSR coordination | 0.5 | $864 |
| 8/28/2024 | Advise client | 0.5 | $864 |
| 8/29/2024 | Draft and revise joint | 2.0 | $864 |

| | status report; exchange with AUSA; finalize for filing | | |
|---|---|---|---|
| 8/30/2024 | Advise client re JSR outcome | 0.2 | $864 |
| 9/19/2024 | Review team memo re FOIA Exemption 7(A) showing | 0.5 | $864 |
| 9/20/2024 | Analysis and correspondence re Exemption 7(A) memo | 0.7 | $864 |
| 9/23/2024 | Advise client; meeting preparation | 0.7 | $864 |
| 9/24/2024 | Docket review; correspondence with client re delivery of agency production and forthcoming joint status report | 0.2 | $864 |
| 9/25/2024 | Correspondence with AUSA and client re delivery address for agency production | 0.2 | $864 |
| 9/26/2024 | Correspondence with AUSA re September joint status report | 0.2 | $864 |
| 9/27/2024 | Draft and revise September joint status report; exchange with AUSA | 1.5 | $864 |
| 10/1/2024 | Review FOIA response correspondence | 0.2 | $864 |
| 10/7/2024 | Correspondence with AUSA re production status | 0.2 | $864 |
| 10/11/2024 | Correspondence with AUSA re production/schedule | 0.5 | $864 |
| 10/14/2024 | Correspondence with AUSA re production status and October joint status report | 0.2 | $864 |
| 10/15/2024 | Correspondence with AUSA re October joint status report | 0.2 | $864 |
| 10/17/2024 | Advise client | 0.7 | $864 |
| 10/29/2024 | Correspondence re | 0.2 | $864 |

| | research/search issues | | |
|---|---|---|---|
| 1/2/2025 | Review revised Alper declaration in support of cross-MSJ | 1.5 | $933 |
| 1/4/2025 | Legal research and analysis for opposition/cross-motion | 2.0 | $933 |
| 1/6/2025 | Briefing analysis; advise client | 1.0 | $933 |
| 1/8/2025 | Review prosecution-background summary; opposition drafting | 2.5 | $933 |
| 1/9/2025 | Revise draft opposition memorandum | 4.0 | $933 |
| 1/10/2025 | Continued revision of opposition memorandum | 2.0 | $933 |
| 1/12/2025 | Review and revise cite-checked opposition and cross-motion brief | 4.0 | $933 |
| 1/13/2025 | Finalize cross-motion, statement of material facts, proposed order; coordinate with AUSA; prepare opposition and cross-motion for filing (ECF Nos. 14, 15) | 7.0 | $933 |
| 1/14/2025 | Motion to seal, corrected Alper declaration (ECF 16); post-filing coordination | 3.0 | $933 |
| 1/15/2025 | Post-filing correspondence re sealed declaration and redacted exhibit | 1.0 | $933 |
| 2/20/2025 | Review docket entry; reply planning | 1.0 | $933 |
| 2/21/2025 | Reply analysis; advise client | 1.5 | $933 |
| 2/23/2025 | Reply drafting/analysis | 1.0 | $933 |
| 3/5/2025 | Revise draft summary judgment reply | 5.0 | $933 |

3

| | | | |
|---|---|---|---|
| | memorandum | | |
| 3/6/2025 | Finalize and file SJ reply (ECF 20) | 4.0 | $933 |
| 3/21/2025 | Advise client regarding pending litigation issue | 0.2 | $933 |
| 4/15/2025 | Analysis of Vaughn Index coding; correspondence with client | 0.5 | $933 |
| 5/27/2025 | Review memorandum opinion and order (ECF 21-22); advise client | 1.5 | $933 |
| 5/28/2025 | Meet-and-confer outreach to AUSA per court order | 0.5 | $933 |
| 6/2/2025 | Meet-and-confer preparation; advise client | 0.5 | $933 |
| 6/3/2025 | Meet-and-confer with AUSA; revise joint status report; request statement of agency intentions per exemption; finalize for filing (ECF 23) | 2.5 | $933 |
| 6/4/2025 | Review filed JSR and order | 0.2 | $933 |
| 7/7/2025 | Follow-up re agency compliance with June 4 order | 0.2 | $933 |
| 7/8/2025 | Correspondence with AUSA re agency's processing under June 4 order | 0.7 | $933 |
| 7/9/2025 | Draft letter to AUSA re agency's processing under June 4 order | 0.7 | $933 |
| 7/10/2025 | Review government counsel response; advise client re status report | 0.5 | $933 |
| 7/14/2025 | Analyze agency production (duplicative documents); draft joint status report; | 2.0 | $933 |

4

| | | | |
|---|---|---|---|
| | exchange with AUSA | | |
| 7/16/2025 | Docket review and correspondence with AUSA re joint status report | 0.5 | $933 |
| 7/22/2025 | Review government's position on renewed briefing sequence; analysis and correspondence with client re strategy | 0.7 | $933 |
| 7/23/2025 | Continued analysis; conference with client re strategy for renewed motion | 0.5 | $933 |
| 7/25/2025 | Correspondence with AUSA | 0.2 | $933 |
| 7/31/2025 | Revise and finalize joint status report for filing (ECF 25) | 1.5 | $933 |
| 8/8/2025 | Advise client | 0.2 | $933 |
| 8/18/2025 | Review draft Alper declaration for renewed motion | 1.5 | $933 |
| 8/25/2025 | Review revised declaration; renewed-motion planning | 2.0 | $933 |
| 8/26/2025 | Roth standard research; declaration review; additional citations | 3.0 | $933 |
| 8/27/2025 | Declaration additions for renewed motion (Exemption 5 analysis time apportioned and excluded) | 0.7 | $933 |
| 8/28/2025 | Review revised declaration; begin renewed motion draft (Exemption 5 analysis time apportioned and excluded) | 1.0 | $933 |
| 8/29/2025 | Draft renewed summary judgment motion and supporting Alper declaration; portion attributable to | 6.5 | $933 |

5

| | | | |
|---|---|---|---|
| | unsuccessful, severable issues (reconsideration vehicle; three-document claim) apportioned and excluded | | |
| 8/30/2025 | Procedural analysis of vehicle for renewed motion; review authority; restructure motion (reconsideration-specific time apportioned and excluded) | 1.5 | $933 |
| 8/31/2025 | Draft combined summary judgment and reconsideration motion; circulate for review | 4.0 | $933 |
| 9/1/2025 | Finalize supplemental SMF, proposed order, second supplemental declaration and exhibits; resolve filing questions | 4.0 | $933 |
| 9/2/2025 | Final cite-check and filing (ECF 26) | 1.0 | $933 |
| 9/26/2025 | Correspondence re response schedule for renewed motion | 0.5 | $933 |
| 10/1/2025 | Review Standing Order No. 25-55 (stay of civil proceedings involving the United States upon lapse of appropriations); advise client re effect on briefing schedule | 0.7 | $933 |
| 10/13/2025 | Advise client re potential motion | 0.5 | $933 |
| 10/15/2025 | Review comparable docket (25-946); draft motion review; seek government position from AUSA | 1.5 | $933 |
| 10/16/2025 | Correspondence with deputy civil chief Pfaffenroth re | 2.5 | $933 |

6

| | government position; edit and file motion for relief with proposed order (ECF 27) | | |
|---|---|---|---|
| 10/17/2025 | Post-filing correspondence; docket review | 0.7 | $933 |
| 10/21/2025 | Review government opposition (ECF 28); advise client | 1.0 | $933 |
| 10/22/2025 | Research memo re FBI agents testifying (responsive to ECF 28) | 1.5 | $933 |
| 10/27/2025 | Pleading outline and short declaration | 1.0 | $933 |
| 10/28/2025 | Continued outline/declaration work | 1.0 | $933 |
| 10/29/2025 | Privacy-point analysis; revise declaration | 2.5 | $933 |
| 10/30/2025 | Draft reply memorandum; circulate | 3.0 | $933 |
| 10/31/2025 | Revise and file reply (ECF 29) | 3.0 | $933 |
| 1/26/2026 | Case status review; advise client | 0.5 | $998 |
| 1/29/2026 | Follow-up correspondence re Alper declaration | 0.2 | $998 |
| 2/16/2026 | Review revised fourth supplemental Alper declaration | 1.0 | $998 |
| 2/17/2026 | Docket review re filing of fourth supplemental declaration (ECF 30) | 0.2 | $998 |
| 3/4/2026 | Advise client re case status | 0.5 | $998 |
| 4/1/2026 | Correspondence re case status while decision pending | 0.2 | $998 |
| 4/22/2026 | Correspondence re case status while decision pending | 0.2 | $998 |
| 5/14/2026 | Review memorandum | 1.0 | $998 |

| | | | |
|---|---|---|---|
| | opinion and order (ECF 31-32); initial analysis | | |
| 5/15/2026 | Review decision; advise client | 1.0 | $998 |
| 5/16/2026 | Continued analysis; correspondence with AUSA | 0.7 | $998 |
| 5/18/2026 | Advise client | 0.5 | $998 |
| 5/19/2026 | Draft and file opposition to government's motion to extend disclosure deadline (ECF 34) | 0.5 | $998 |
| | **Subtotal — 2024 hours at $864/hr (2024 Fitzpatrick Matrix):** | 18.0 | $15,552.00 |
| | **Subtotal — 2025 hours at $933/hr (2025 Fitzpatrick Matrix):** | 98.7 | $92,087.10 |
| | **Subtotal — 2026 hours at $998/hr (2026 Fitzpatrick Matrix):** | 6.5 | $6,487.00 |
| | **TOTAL:** | 123.2 | $114,126.10 |

# EXHIBIT B

*Alper v. U.S. Department of Justice, No. 1:24-cv-01837 (DLF) (D.D.C.)*

### THE FITZPATRICK MATRIX
Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 | 760 | 807 | 864 | 933 | 998 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 | 758 | 805 | 862 | 931 | 996 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 | 757 | 804 | 861 | 930 | 995 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 | 754 | 801 | 858 | 927 | 992 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 | 752 | 799 | 856 | 924 | 989 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 | 749 | 795 | 851 | 919 | 983 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 | 745 | 791 | 847 | 915 | 979 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 | 741 | 787 | 843 | 910 | 974 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 | 736 | 782 | 838 | 905 | 968 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 | 731 | 776 | 831 | 897 | 960 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 | 726 | 771 | 826 | 892 | 954 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 | 720 | 765 | 819 | 885 | 947 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 | 714 | 758 | 812 | 877 | 938 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 | 707 | 751 | 804 | 868 | 929 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 | 699 | 742 | 795 | 859 | 919 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 | 692 | 735 | 787 | 850 | 910 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 | 684 | 726 | 778 | 840 | 899 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 | 675 | 717 | 768 | 829 | 887 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 | 666 | 707 | 757 | 818 | 875 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 | 656 | 697 | 746 | 806 | 862 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 | 647 | 687 | 736 | 795 | 851 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 | 635 | 674 | 722 | 780 | 835 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 | 625 | 664 | 711 | 768 | 822 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 | 614 | 652 | 698 | 754 | 807 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 | 601 | 638 | 683 | 738 | 790 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 | 589 | 625 | 669 | 723 | 774 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 | 576 | 612 | 655 | 707 | 756 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 | 563 | 598 | 640 | 691 | 739 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 | 550 | 584 | 625 | 675 | 722 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 | 535 | 568 | 608 | 657 | 703 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 | 521 | 553 | 592 | 639 | 684 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 | 505 | 536 | 574 | 620 | 663 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 | 490 | 520 | 557 | 602 | 644 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 | 473 | 502 | 538 | 581 | 622 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 | 457 | 485 | 519 | 561 | 600 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 | 440 | 467 | 500 | 540 | 578 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 | 207 | 220 | 236 | 255 | 273 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

<u>Explanatory Notes</u>

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia.  It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged.  *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b).  A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  The matrix is not intended for use in cases in which the hourly rate is limited by statute.  *E.g.*, 28 U.S.C. § 2412(d).

3.  For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires.  *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4.  The years in the column on the left refer to an attorney's years of experience practicing law.  Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school.  If the year of law school graduation is unavailable, the year of bar passage should be used instead.  Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience.  For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience.  (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year.  As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.)  Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work.  *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5.  The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in July 2020 in Bloomberg Law: keywords ("motion n/5 fees AND attorney!") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket and Documents)").  This returned a list of 781 cases.  Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g.*, *Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court. *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases"). That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'" *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia. *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above. If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet. Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year. For this reason, the matrix was modeled using one rate for each calendar year. On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases. The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded. The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk. The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases. They spanned from 2013 to 2019 and from $60 to $290. (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10. The matrix was created with separate regressions for the lawyer data and the paralegal data. For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number. The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013). For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged. The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data. The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career). *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974). The resulting regression formula was

rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013).  Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model.  Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020.  To generate rates after 2020, an inflation adjustment (rounded to the nearest whole dollar) has been added.  The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix would do likewise.  *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.  That was the approach followed for the years 2021 through and including 2023.  However, the Bureau of Labor Statistics has now ceased consistently publishing monthly data for the legal services index of the Consumer Price Index.  As an alternative, the legal services index of the Producer Price Index, which continues regularly to provide updated data, has been used to generate the rates for 2024 and thereafter.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

13. This matrix and an alternative, preexisting matrix were extensively examined, and, based on that analysis, this matrix was the one selected for computation of the hourly rates for the attorneys' fees awarded in *J.T. v. District of Columbia*, 652 F. Supp. 3d 11 (D.D.C. 2023) (Howell, C.J.), and in *Brackett v. Mayorkas*, Civ. A. No. 17-0988, 2023 WL 5094872 (D.D.C. Aug. 9, 2023) (Boasberg, C.J.).