**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TY ALPER**, Plaintiff, | ) | |
| v. | ) | Civil Action No. 24-1837 (DLF) |
| **DEPARTMENT OF JUSTICE,** Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff Ty Alper respectfully submits this reply in support of his motion for an award of attorneys' fees and litigation costs under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E), and Federal Rule of Civil Procedure 54(d)(2). ECF No. 41.

**INTRODUCTION**

The government does not dispute that plaintiff won this case. It does not dispute that he is entitled to an award of fees. It does not dispute the rates. What it disputes is the hours — and it disputes nearly all of them. The chart it submits marks all but a handful of the ninety-eight entries in counsel's statement for exclusion or reduction: the complaint, the status reports, the correspondence with its own counsel, the summary judgment briefing, even the time counsel spent reading this Court's rulings.

What the opposition does not do is engage with what this litigation required or with what it produced. It has a great deal to say about the length of counsel's emails and nothing to say about the 417 pages the FBI released after this Court rejected its position.

That omission is the heart of the matter. The FBI withheld all 513 potentially responsive pages in full. This Court denied the government's motion with prejudice as to the records

plaintiff had identified and granted plaintiff's cross-motion. The FBI then abandoned Exemption 7(A) altogether and produced 417 pages it had insisted could not be released at all. A second round of briefing produced a further release of 125 pages, with additional information unredacted, including the names of the FBI agents who wrote the 1997 memorandum concluding that a retrial of Mr. Johnson was highly unlikely. Supp. Sobel Decl. ¶ 6 & Ex. D. Every page of that came out of the work the government now says was unnecessary, unclear, or both.

Nor is the challenge well documented. The opposition's account of this Court's May 27, 2025 Order leaves out the paragraph in which the government lost. Its chart marks work non-compensable on grounds the docket contradicts. And in several instances it marks entries vague because the reviewer did not recognize the subject — including the controlling D.C. Circuit authority in this case and the government's own *Vaughn* index.

## ARGUMENT

### I. The Government's Objection Is Global, and It Is Not Explained

The agency describes its chart as "a line-by-line examination of Plaintiff's time entries." Opp. at 1. In practice DOJ's chart finds fault with almost everything counsel did. An objection of that breadth is not an assessment of which tasks were necessary and which were not. It is a single position — that the fee should be much smaller — expressed ninety-four times.

The proposed number is not explained either. The government asks the Court to award no more than $40,000 against a lodestar of $114,126.10. Plaintiff's supplemental declaration, filed with this reply, withdraws one entry and reduces that figure to $112,830.10. Supp. Sobel Decl. ¶ 5. There is no percentage in the brief, no calculation, and no account of which work is being paid for and which is not. What the figure corresponds to, near enough, is the lodestar with the summary judgment briefing removed and everything else left in — including all of the

entries the government elsewhere calls vague and clerical. That is not a reasonableness adjustment. It is a proposal to pay counsel for the housekeeping and nothing for the case.

The government also asks, having conceded plaintiff's eligibility and entitlement to an award, that the motion be denied outright. *Id.* at 3, 12. Those positions cannot both be held; the docket and the result of this litigation demonstrate that counsel performed a substantial amount of well-documented work — work for which the agency argues counsel should not be compensated.

**II. Plaintiff Did Not "Partially" Prevail in Any Sense That Matters Here**

DOJ's central contention is that both rounds of summary judgment briefing were only partially successful, and that the time devoted to them is therefore non-compensable. The contention rests on a flawed description of the Court's May 27, 2025 Order.

The government asserts that the Order granted its motion "with prejudice" on certain exemptions and denied plaintiff's motion "without prejudice" on others. Opp. at 3. The Order in fact begins by providing that "[t]he government's Motion for Summary Judgment is denied with prejudice, and Alper's Cross-Motion for Summary Judgment is granted," as to the Exemption 7(A) withholding of records plaintiff had identified. ECF No. 21 ¶ 1. The opposition does not mention that paragraph. It does not mention that the Order used "with prejudice" three times and each time to describe a denial — once the government's own. The Order granted no motion with prejudice, the government's or plaintiff's. And it does not mention that the denials without prejudice ran against both parties and came with an invitation to plaintiff to supplement the record as to Exemptions 6 and 7(C), ECF No. 22 at 9, an invitation he accepted and on which he then prevailed as to three of the four categories of withheld names. When this Court later summarized that Order, it began with the ruling the opposition omits: it "granted Alper's cross-

motion for summary judgment as to documents withheld under Exemption 7(A) that had previously been disclosed to Johnson's legal team." ECF No. 32 at 2. The chart carries the government's position to its conclusion. The entry recording counsel's review of that Order — the Order in which the government's own motion was denied with prejudice — is itself marked non-compensable because plaintiff's motion was "only partially successful." DOJ Ex. 1 at 3 (entry of May 27, 2025).

The account of the second Order is selective in the same way. DOJ's parenthetical quotes the paragraph denying reconsideration as to Exemption 5. It does *not* mention the paragraph above it, which granted Alper's renewed motion for summary judgment as to the documents withheld under Exemptions 6 and 7(C), or the paragraph below it, which ordered the FBI to disclose the names of the agents who drafted the 1997 memorandum, the redacted names in the Ansley documents, and the names of the hotel guests matching their witness statements. ECF No. 31.

The premise underlying defendant's argument is wrong as well. Plaintiff does not seek compensation for all of the work performed on either round. The time devoted to plaintiff's response to the agency's compliance declaration[1] — which sought relief this Court denied — is excluded in full, and the renewed motion is claimed net of apportionment rather than at the hours recorded.[2] No time is claimed for plaintiff's own substantial work, clerical time is excluded, and every entry is rounded down. ECF No. 41 at 11–12; Sobel Decl. ¶ 7.

---

[1] The agency's compliance declaration reported the FBI's compliance with the Court's disclosure order. Plaintiff's response to it sought *in camera* inspection of certain records; the Court denied that relief. ECF Nos. 37–39.

[2] *Hensley v. Eckerhart* asks whether a court must "apportion the fee award mechanically on the basis of . . . success or failure on particular issues," 461 U.S. 424, 435 (1983), and holds it need not where claims share a common core of facts. "Apportionment" here refers to the narrower,

The law does not ask a court to keep this kind of ledger in any event.[3] *Hensley v. Eckerhart* instructs that where successful and unsuccessful contentions share a common core of facts, the court "should focus on the significance of the overall relief obtained" rather than parcel the hours out contention by contention. 461 U.S. 424, 435 (1983). Each of the four briefs was directed to one factual record and one objective, and the objective was achieved twice, by order of this Court.

The government invokes the same decision for the proposition that the degree of success obtained is the most critical factor in setting a fee. Opp. at 3, 4, 10. It is, and the degree of success here is not in dispute. The FBI told this Court that every one of 513 potentially responsive pages was exempt from disclosure in full. It released 417 pages and then reprocessed 125 of them, disclosing names it had said were exempt. *Hensley* directs the Court's attention to what the litigation accomplished, not to a tally of the contentions rejected along the way.

The government's own authority is to the contrary. *Copeland v. Marshall* does say that no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail. 641 F.2d 880, 891–92 (D.C. Cir. 1980) (*en banc*). But the footnote appended to that very sentence supplies the qualification the opposition omits. A lawsuit, the court explained, may seek recovery under a variety of legal theories complaining of

---

entry-level practice: separating unsuccessful, severable-issue hours from the rest of a bundled entry, as counsel did before filing the motion. Sobel Decl. ¶ 7.

[3] Exemption 5 illustrates the point. It is the government's leading example of a claim on which plaintiff did not prevail. This Court found that plaintiff "does not meaningfully challenge the FBI's withholdings under this privilege" and that "[h]is only opposition appears in a footnote." ECF No. 22 at 12; *see* ECF No. 15-1 at 18 n.12. In the second round, counsel's records separately identified the Exemption 5 analysis and it was removed from the claim. The motion for reconsideration was denied, but not without effect: the Court directed the FBI to review the documents withheld under Exemption 5 and to attest in detail whether any non-privileged information, including nonlegal strategic advice, is segregable and disclosable. ECF No. 31; ECF No. 32 at 16.

essentially the same injury, and "[a] district judge must take care not to reduce a fee award arbitrarily simply because a plaintiff did not prevail under one or more of these legal theories." *Id.* at 892 n.18. No reduction is appropriate where the issue was "all part and parcel of one matter"; a fee may be pared only where the claims asserted "are truly fractionable." *Id.* (quoting *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979)). The contentions in these four briefs were not fractionable. Each was directed to a single question: whether the FBI could withhold the records plaintiff had requested.

*Copeland* bears on the government's position in a second way. Confronting the government's contention that plaintiff's counsel had spent too many hours, the *en banc* court observed that "[t]he government's contentious litigation strategy forced the plaintiff to respond in kind," and that "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." 641 F.2d at 904. The FBI told this Court that 513 pages were categorically exempt and defended that position through two rounds of summary judgment briefing. The hours the agency now calls unnecessary are the hours its own litigating position required.

The government's remaining authority is not to the contrary. *Anthony v. Sullivan*, 982 F.2d 586 (D.C. Cir. 1993), denied fees for a discrete appellate proceeding in which the applicant — already paid in full for the merits of his case — had lost on every contested issue. *Id.* at 589–90. Nothing of the kind happened here. And *Anthony* preserves fees for unsuccessful arguments "submitted as alternative grounds for a successful outcome that the plaintiff did actually achieve," *id.*, which describes these briefs exactly. The two district court decisions offered for the proposition that unsuccessful motions practice is non-compensable, Opp. at 3, describe what

plaintiff has already done: the one motion on which he sought and was denied relief — his response to the agency's compliance declaration — is excluded from this claim in full.

Nor did the government undertake the exercise it asks of the Court. It did not identify the hours attributable to any particular unsuccessful contention. It marked the periods during which the two rounds of briefing were prepared and applied the same notation across them without regard to what the entries describe — among them a motion to seal, correspondence about a sealed declaration and a redacted exhibit, a docket review, and the review of a supplemental declaration filed months after the briefing had closed. DOJ Ex. 1 at 3–4. On two of those entries the government stated its objection and left blank the column that would tell the Court what relief it seeks. *Id.* at 3 (entries of Aug. 18 and 25, 2025).

The apportionment the agency demands was made before the motion was filed, and the government knows it: the final section of its brief complains about those very apportionments, faulting counsel for noting a reduction after the outcome was known. The same six entries carrying the apportionment parentheticals in Plaintiff's Exhibit A are separately marked non-contemporaneous on DOJ's chart, each because the "time entry [was] adjusted after motion partially denied." DOJ Ex. 1 at 4 (entries of Aug. 27–Sept. 1, 2025). It cannot be error both to apportion and not to apportion.

**III. DOJ's Chart Does Not Reflect Familiarity with the Litigation It Describes**

What follows is illustrative, not exhaustive. A chart that objects to ninety-four of ninety-eight entries cannot be answered entry by entry within the compass of a reply; the examples below are representative of the pattern that runs through DOJ's notations of objection.[4] This

[4] The chart does not so much assess individual entries as accumulate labels against them: twenty-nine entries carry a single designation, thirty-one carry two, twenty-four carry three, and nine carry four. The ninety-fourth is marked for reduction with no designation at all. In the

Court has taken the same view of an opposition of comparable breadth. In *Black Rock City LLC v. Haaland*, No. 19-cv-3729 (DLF), 2024 WL 1406549, at *5 (D.D.C. Mar. 28, 2024), having found most of the applicant's entries reasonable and justified, the Court declined to "address each of the Bureau's objections," citing *Bennett v. Castro*, 74 F. Supp. 3d 382, 406 (D.D.C. 2014) ("Defendant's objections are too numerous to address individually.").

Counsel's research into the *Roth* standard is marked for exclusion as vague, with the explanation: "e.g., what is the 'roth standard'?" DOJ Ex. 1 at 4 (entry of Aug. 26, 2025). *Roth v. Department of Justice*, 642 F.3d 1161 (D.C. Cir. 2011), is the decision this Court applied in ordering the disclosures plaintiff obtained. ECF No. 32 at 13. Counsel's analysis of *Vaughn* index coding is marked vague because the government does not know "what is 'Vaughn index coding.'" DOJ Ex. 1 at 3 (entry of Apr. 15, 2025). The government prepared the *Vaughn* index in this case and filed it. ECF No. 19-1.[5]

That bears on more than two entries. An objection to nearly every hour in a fee claim is worth only as much as the reviewer's grasp of the work being reviewed. Where the review does not recognize the controlling authority or the government's own submission, it is not a reliable guide to which hours this litigation required. The chart likewise asks what "pending litigation issue" counsel advised his client about on March 21, 2025, when the cross-motions had been

---

aggregate, the chart marks seventy-five of the ninety-eight entries vague, forty block-billed, and twenty-nine excessive. DOJ Ex. 1.

[5] The label is not confined to entries that are actually spare. The chart marks as vague the entry of January 13, 2025 — at seven hours, the largest entry in the statement — even though it names four documents and two docket numbers: "Finalize cross-motion, statement of material facts, proposed order; coordinate with AUSA; prepare opposition and cross-motion for filing (ECF Nos. 14, 15)." DOJ Ex. 1 at 3. It does the same with the entry of August 29, 2025, which identifies the brief drafted, the declaration prepared, and the two discrete issues for which time was apportioned and excluded. DOJ Ex. 1 at 4. Whatever else may be said of these entries, the Court can tell what counsel did.

fully briefed and were awaiting decision, and what "pleading" he outlined on October 27, 2025, four days before filing the reply. DOJ Ex. 1 at 3–4.

The pattern holds where the grounds for DOJ's chart can be checked against the docket. The opposition would strike counsel's time on the motion for relief from the standing order entered during the 2025 lapse in appropriations, because "Plaintiff is not entitled to fees because the Court took measures to deal with a government shutdown." DOJ Ex. 1 at 4 (entries of Oct. 1, 13, 15, 16, 17 & 21, 2025). No authority is offered, and the premise has it backwards. This Court granted that motion in full on the day it was filed and, in the same order, directed the government to respond to the renewed summary judgment motion by October 22, 2025. Minute Order of Oct. 16, 2025. Counsel represented, without contradiction, that the government took no position on the motion. ECF No. 27 ¶ 7. The work the agency would strike is the work that kept an expedited case from being suspended and produced the schedule under which the government itself briefed.

DOJ would also strike counsel's half hour opposing the government's request to postpone disclosure, because that motion "was granted and the argument upon which it was based was correct." DOJ Ex. 1 at 5. This Court directed plaintiff to file any opposition to the motion by May 20, 2026. Minute Order of May 18, 2026. The government had asked to push the deadline to July 14; it received one week. Within days, the government itself abandoned the premise: it "no longer s[ought] a 60-day extension" and had "determined that it will not appeal." Minute Order of May 23, 2026 (quoting Dkt. 35 at 1). The records were produced, and the case closed.

The agency also faults an entry of September 26, 2025 because "the AUSA received no 'correspondence' on this date, so 'correspondence' with whom?" DOJ Ex. 1 at 4. Counsel's time entry does not say the correspondence was with government counsel; where an entry in the

billing statement refers to communications with government counsel, it says so. That correspondence was with Mr. Alper, about the anticipated lapse in appropriations and its effect on the government's deadline to respond to plaintiff's renewed motion — a deadline that, as it turned out, fell on the first day of the lapse. Supp. Sobel Decl. ¶ 4.

Finally, ten of the government's eleven exhibits are directed at counsel's emails to opposing counsel, on the theory that the messages were too short to bill for. They account for some four hours of the claim, and the section that dissects them says nothing about the four summary judgment briefs. Read in full, the emails show counsel writing repeatedly to an adversary who was not answering, and what the short messages did. The message the government holds up as "five words" was a second follow-up to a court-ordered meet and confer. DOJ Ex. 3. Two weeks later counsel was still writing to say he had "written twice and left . . . voicemail, none of which has been acknowledged," and the government replied apologizing for its "recent non-responsiveness." DOJ Ex. 4. The three-sentence email in that same exchange is the one in which counsel objected to the Bureau's proposal to begin production in November and complete it at year's end, and insisted instead on the FBI's standard processing rate of 500 pages per month. Three days later this Court ordered all 513 pages processed by September 30, 2024 — an order the government reproduces in its own Exhibit 5. And the "one line email" of October 15, 2024 transmitted counsel's edits to the joint status report; the exhibit names the attachment. DOJ Ex. 9. The government measured the covering note without opening what came with it.[6]

[6] Two more of the government's exhibits undercut the label. The entry of October 14, 2024 is marked excessive because the message "consists of only two complete sentences"; the message sets out a four-part proposed briefing schedule and asks how the parties should present their competing proposals to the Court. DOJ Ex. 8. The entry of July 9, 2025 is marked excessive because the "letter" is "a short email"; the message quotes this Court's June 4 order, states that plaintiff had received nothing from the agency, records that counsel's inquiry of the previous day

As for the records themselves, the question is whether the documentation permits the Court to determine that the hours were actually and reasonably expended. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). The government states the same standard, quoting the requirement that counsel "maintain contemporaneous, complete and standardized time records which accurately reflect the work done." Opp. at 10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). The inquiry does not make the Court an auditor: "trial courts need not, and indeed should not, become green-eyeshade accountants," because "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see WP Co. v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 277 (D.D.C. 2021) (a court "need not — and should not — scrutinize every billing entry"). DOJ describes a "deluge" of entries recording that counsel advised his client about matters that "may or may not even be related to this litigation." Opp. at 7. Nearly every entry of that kind states its subject — the filing, the ruling, the schedule — and the few that do not state one account for less than two hours total. Entries of that kind clear the threshold in any event. Judges in this district have considered sufficient such entries as "Research and drafting of FOIA part of complaint," "Organize deposition documents," and "Email to team regarding call with HUD." *Black Rock City*, 2024 WL 1406549, at *5 (citing *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 66 (D.D.C. 2013), and *Bennett*, 74 F. Supp. 3d at 405).

had gone unanswered, and states that plaintiff will raise the matter in the joint status report. DOJ Ex. 11. Two notations are not objections to time at all: the entry of September 26, 2024, two-tenths of an hour, carries the notation "Plaintiff merely provided his address" with no disposition marked, DOJ Ex. 1 at 2, and the entry of May 28, 2025, recording meet-and-confer outreach undertaken pursuant to this Court's order, is marked for reduction with no justification stated. *Id.* at 3.

Where an entry states that counsel advised the client, the communication was with Mr. Alper or with personnel of the Death Penalty Clinic at the University of California, Berkeley, School of Law, who assisted him in the underlying post-conviction proceedings. Supp. Sobel Decl. ¶ 3. The opposition's one worked example is of a piece. It asks what was "comparable" about the docket counsel reviewed on October 15, 2025, and reports that the records "offer no answers." Opp. at 8. The entry answers the question in the clauses the government does not quote: counsel reviewed that docket, reviewed a draft motion, and sought the government's position on the motion for relief from the standing order, which was filed the next day. DOJ Ex. 1 at 4 (entry of Oct. 15, 2025). Counsel's explanation for describing a handful of entries generally — that fuller descriptions would disclose privileged communications — is sworn, at paragraph 7 of the declaration to which the exhibit is attached, notwithstanding DOJ's statement that it "is not even supported by a declaration." *Id.*

Block billing fares no better. The opposition takes its definition from *Cobell v. Norton*, 407 F. Supp. 2d 140, 159 (D.D.C. 2005): entering "the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Opp. at 9. That is not the practice of counsel here. Plaintiff's Exhibit A is itemized by date and by task, in six-minute increments, with every entry rounded down. What DOJ's chart marks as block billing is an entry naming two related tasks performed the same day and stating their combined time.[7] The government's own authority holds that such grouping is not a ground for reduction where the descriptions are adequate and the grouping is not excessive. *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006). Confronted with the same pairing of objections — vague descriptions and

---

[7] *E.g.*, DOJ Ex. 1 at 3 (entry of Jan. 6, 2025) ("Briefing analysis; advise client," one hour). So too the entries of September 24 and 25, 2024, each twelve minutes, and the entry of June 25, 2024, which excludes clerical filing time on its face and is marked block-billed regardless. DOJ Ex. 1 at 2.

"relatively minor instances of block billing" — a judge of this Court declined "to engage in the kind of 'nitpicking' invited by" them, and found no reduction warranted where the entries "deal[t] with minimal time periods . . . and typically conflate[d] but two tasks." *WP Co.*, 514 F. Supp. 3d at 279 (quoting *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 171 (D.D.C. 2018)). The largest entries correspond to the drafting and filing of the briefs.

A judge of this Court has already examined the timekeeping method used here. In *CREW v. DOJ*, 142 F. Supp. 3d 1, 16 (D.D.C. 2015), the court reduced the plaintiff's requested hours by eighteen percent for failure to adhere to contemporaneous timekeeping standards, but excepted the fee-application hours of undersigned counsel, who "maintained a running, contemporaneous tally of time devoted to each discrete task performed," "described each task in adequate detail, and recorded his time in six-minute increments." The same method produced Exhibit A and the itemization accompanying this reply.

The August 28, 2025 entry is not what defendant takes it for. The agency asserts it was "palpably created (or, at a minimum, edited) after" this Court ruled on the second round of summary judgment briefing. Opp. at 11. The hours in that entry were recorded when the work was performed; the parenthetical beside it is not a record of time but a notation of time removed from the claim, reflecting the apportionment described above. Supp. Sobel Decl. ¶ 2.

DOJ's "double-billing" objection targets three sequential entries: analysis of this Court's May 2026 memorandum opinion and order on May 14, review of the decision and advice to the client on May 15, and continued analysis together with correspondence to government counsel on May 16. DOJ Ex. 1 at 4. Each entry states a task the others do not: only the May 14 entry records the initial read of a lengthy opinion, only the May 15 entry records advising the client of its contents, and only the May 16 entry records writing to opposing counsel. Three tasks

recorded across three days, each identified in the entry that reports it, are not the same task billed three times.

One objection is correct so far as it goes. The hours counsel devoted to the fee application are stated in his declaration but were not itemized. Opp. at 11. Plaintiff reserved the right to supplement, ECF No. 41 at 13, and does so now: the Supplemental Declaration of David L. Sobel, filed with this reply, sets out that time by date, task, and duration, including the time devoted to this reply — 31.9 hours in all, or $31,836.20 at counsel's current rate, which together with the merits lodestar as reduced yields the amount sought below. Supp. Sobel Decl. ¶ 7 & Ex. C. Such hours are compensable. *EPIC v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015).

**CONCLUSION**

The FBI told this Court that not one of 513 pages could be released. It was wrong. The first round of summary judgment briefing resulted in the release of 417 previously withheld pages; the second resulted in the reprocessing and rerelease of 125 pages with additional information unredacted, bearing on whether a man on Alabama's death row is innocent. The government now asks the Court to treat the work that produced those disclosures as largely non-compensable, on a record that does not describe this Court's orders accurately and does not appear to have engaged with the litigation it evaluates. The Court should grant the motion and award plaintiff attorneys' fees in the amount of $144,666.30 and costs in the amount of $405.

Respectfully submitted,

***/s/ David L. Sobel***

DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015

(202) 246-6180

*Counsel for Plaintiff*